[Civ. No. 1121.   Third Appellate District.—December 27, 1913.]

## HENRY DANNENBRINK et al., Appellants, v. J. A. BURGER et al., Respondents.

WATERS AND WATERCOURSES—WATER SEEPING FROM DITCH OF APPRO-PRIATOR—SUBSEQUENT APPROPRIATION BY OTHERS.—A prior appropriator of water may not so repair or reconstruct his ditch, flumes, and dam as to prevent water seeping through them from discharging into the original stream from which the water was taken, after such discharge has continued uninterruptedly for a length of time sufficient to establish a prescriptive title thereto in one who has actually appropriated and continuously used such seepage water, after its return to the original stream, during all of such period.

Id.—Amount of Water Appropriated—How Determinable.—It is neither the capacity of the ditch, nor the amount originally appropriated, which determines the rights of an appropriator of the waters of a stream, but the amount which he puts to some beneficial use.

Id.—Water Escaping from Artificial Watercourse—Rights of Appropriator Thereof.—Where water escaping or leaking from an artificial watercourse goes to waste by flowing promiscuously over other lands, or finds its way to some other stream than the one from which it has been diverted, a person appropriating such water merely takes the *corpus* and not the usufruct therein, thereby leaving the owner of such ditch or artificial watercourse at liberty at any time to change or alter it without invading any vested right of the appropriator. But this rule does not apply where the escaped water has returned to the stream from which it was originally diverted, and has thereafter been appropriated by others than the original appropriator.

APPEAL from an order of the Superior Court of Trinity County refusing a new trial. Stanley A. Smith, Judge presiding.

The facts are stated in the opinion of the court.

H. R. Given, for Appellants.

J. D. Hall, and C. Wm. White, for Respondents.

HART, J.—This is a suit to quiet title to certain water-rights and to enjoin the defendants from claiming or asserting any claim to said water-rights and from interfering with the full enjoyment thereof by the plaintiffs.

The defendants were awarded judgment on the issues made by their answer to the complaint.

In due time the plaintiffs presented a motion for a new trial, which was denied, and this appeal is prosecuted by them from the order denying said motion.

The vital point upon which the decision of the controversy between the plaintiffs and the defendants must depend involves the question whether the latter were entitled to appropriate and thus acquire the right to use the waters which it is claimed have for many years seeped or percolated through a certain ditch, owned by the plaintiffs and their predecessors for over thirty years immediately prior to the commence-

ment of this action and whereby they utilized, principally for mining purposes, a large proportion of the waters of a stream known as Gwin gulch, in Trinity County.

Said gulch is a mountain stream and the quantity of water that it carries, like all ordinary mountain streams, varies according to the seasons of the year. In the winter time or the rainy season the flow of water in the gulch is large, while in the summer months or those months during which there is little, if any, rain, the flow of water naturally decreases so that the stream contains or carries during such periods a very small amount of water. The plaintiffs claim the right, by appropriation, to take and use twelve hundred inches of water from said gulch by means of three ditches, named and known as the "Waste Ditch," the "Eagle Ditch," and the "Empire Ditch."

The complaint alleges that "the said ditches and the water-rights appurtenant thereto have been more than thirty years last past and now are appurtenant to that certain group of mining claims situated in said Cañon Creek Mining District, commonly known as the Dannenbrink group of mines, and for all of said period have been used on said mining properties for a useful and beneficial purpose; that said defendants claim some other right to said ditches and water-right from said Gwin gulch as against the plaintiffs herein, which said claim is without any right whatever and is adverse to plaintiffs; that the defendants have no right or interest in said waters of Gwin gulch or said above-named ditches or any part or portion thereof."

The defendants, in their answer, admit the plaintiffs' ownership and possession of the Waste ditch, and that the plaintiffs were the owners of an undivided one-half interest in and to the Empire ditch, and were, with their co-owners, not parties to this action, the owners of and entitled to three hundred inches of water of the "first flow" of said Gwin gulch diverted by and through said Empire ditch. It is alleged in the answer that said Eagle ditch "is now and for more than five years last past has been abandoned and unused and no water has been diverted by or through said ditch by plaintiffs or any other person or persons for more than five years immediately preceding the commencement of this action." The defendants further allege and claim that they

are the owners of and entitled to seventy-two inches of the
"second flow" of the waters of Gwin gulch, appurtenant to
two ditches of which they are the owners, viz.: the "Slack"
ditch and the "Peek" ditch, the first mentioned of said
ditches being located and connected with Gwin gulch about
nine hundred and sixty feet below the intake of the Waste
ditch and the Peek ditch about fifteen hundred feet below
the intake of said Waste ditch. The answer then alleges
that the seventy-two inches of water (measured under a
four-inch pressure) which they have the right to use and
divert from said Gwin gulch, as above stated, are so conveyed
to the lands and premises of the defendants, "situated in the
Cañon Creek Mining District, Trinity County," and described
as "lot 40, embracing a portion of township 24 north, range
11 west, M. D. M., and other lands adjacent thereto"; that
the waters so diverted by the defendants from Gwin gulch
and used upon their said land "have been for over thirty
years last past and now are being used by defendants for
irrigation, domestic, mining and other useful purposes upon
said premises above described, subject only to the prior right
of plaintiffs and their co-owners to take and divert 300
inches of said Gwin gulch, measured under a four-inch pres-
sure, by and through said Empire ditch." It is admitted by
the defendants that the plaintiffs "are the owners of and en-
titled to the third right to use and divert from said Gwin
gulch 800 inches of water measured under a four-inch pres-
sure diverted by and through said Waste ditch."

The court found that the defendants were and are the
owners of the Slack and Peek ditches, whereby water from
Gwin gulch was conveyed to their premises, above described;
that the right to the waters of Gwin gulch, owned by the
plaintiffs herein, and appurtenant to said Waste ditch, is
older than and superior to the right or interest of the de-
fendants in and to any waters of said Gwin gulch, "and the
only right defendants have to the waters of the said Gwin
gulch is to such waters as have seeped or percolated or flowed
through or over plaintiffs' dam at the head of said Waste
ditch, augmented by the drainage waters of the basin tribu-
tary to said Gwin gulch below the dam or intake at the
head of said Waste ditch, both classes of waters not exceed-
ing at any time in the year seventy-two inches of water,

measured under a four-inch pressure; that the water seeping or percolating through or over plaintiffs' dam at the head of said Waste ditch amounts to ten per cent of the amount of water flowing down said Gwin gulch to said Waste ditch dam, after plaintiffs and their co-owners have taken and diverted three hundred inches of the first flow of the waters of said Gwin gulch, measured under a four-inch pressure, by and through said Empire ditch"; that the defendants are the owners of and entitled to the right to use at all times of each year, subject to the rights of the plaintiffs as defined in the foregoing finding, said ten per cent of said waters, "provided that said ten per cent of said waters of Gwin gulch, together with the waters coming into said Gwin gulch below said Waste ditch dam shall not exceed at any time in any year seventy-two inches of water, measured under a four-inch pressure"; that the plaintiffs, after they and their co-owners have taken and diverted three hundred inches of the waters of said Gwin gulch measured under a four-inch pressure, by and through the said Empire ditch, are the owners of and entitled to the right to use at all times of each year ninety per cent of the waters of said gulch flowing to the head dam or intake of the Waste ditch; provided that said ninety per cent of said waters of said gulch shall not exceed at any time in any year nine hundred inches of water, measured under a four-inch pressure, exclusive of the water-right appurtenant to said Empire ditch; that said ten per cent of said waters, together with the waters coming into said gulch below the Waste dam, have been, for more than thirty years and now are, used by the defendants and their grantors and predecessors in interest for irrigation, domestic, mining and other useful purposes upon the premises of defendants above referred to and described; that the defendants have no right or interest in the waters of said gulch other than that specified in the foregoing findings.

The evidence shows that the Waste ditch was constructed in the year 1863, and that during all the time since then the plaintiffs and their predecessors have continuously used said ditch and by means thereof obtained a portion of the water from Gwin gulch owned by them and necessary for their purposes. The evidence further discloses that the Peek and Slack ditches, whereby the defendants and their predecessors

in interest conveyed water from Gwin gulch to and upon their premises, were constructed at a later period, the last-named ditch having been built in the year 1868, and the other at about the same time. It further appears from the evidence that, from the time that the Slack and Peek ditches were built and put to use, the dam and flume of the Waste ditch were in such condition as that a small proportion of the water taken into said ditch from Gwin gulch percolated or seeped through said flume and through and under said dam and again found its way to the channel of the gulch. It was this seepage water, with the drainage waters of the basin tributary to said Gwin gulch below the dam or intake at the head of said Waste ditch, which the defendants and their predecessors had appropriated and continuously used for their purposes for a period of about twenty-five years and until the year 1907. In the year just mentioned, the plaintiffs, as the evidence shows, removed the flume, tightened the ditch so that it would no longer admit of the loss by seepage of any of the waters taken into it, and installed a new dam, impermeable or watertight, in the place of the old dam, which was built in part of logs and loosely constructed, and which had for fully twenty-five years been maintained in connection with the said ditch. These changes in the dam and ditch resulted, of course, in preventing water from said ditch returning, in any perceptible degree, to the gulch, and thus causing the defendants to be deprived of sufficient water from said stream to supply their needs. Although the plaintiffs claim that but an insignificant amount of water at any time returned from said ditch to the original stream in the summer time, they admit that, as to the extent of the leakage, the testimony is conflicting. And, in this conection, it may be stated that the plaintiffs contend that on occasions when more than a mere trace of water returned to the original stream from said ditch through leakage it was due to the punching of holes in the flume or dam by the defendants or their predecessors, and that but for such "punching process," as it is characterized by counsel for the plaintiffs, the quantity of water seeping from the Waste ditch and returning to the gulch would not at any time have been of any material consequence; but upon that question the evidence is also conflicting, and, therefore, the implied finding of the

trial court adversely to the contention of the plaintiffs with respect thereto is binding upon this court.

We have not regarded it necessary to enter into a detailed statement and examination of the evidence in this opinion, it being sufficient, in our opinion, briefly to present, as we have in the foregoing statement, the important facts brought out at the trial and as found by the court. It is conceived that the findings of the trial court that the defendants are entitled to certain waters of Gwin gulch, including those waters which have for many years percolated through and under the Waste ditch and dam, are well supported by the evidence. There remains, therefore, but one question to be determined by this court. This question is thus stated by the plaintiffs: "Whether or not a prior appropriator has, at any time, the right to tighten his dam, flumes and ditch so that there shall be no leakage therefrom," the argument being that the evidence adduced at the trial of the present case goes no further than to show that the plaintiffs, in repairing their ditch and its appurtenances, performed an act which resulted only in the conservation of the amount of the waters of Gwin gulch originally appropriated by them and which are and were at all times necessary for their legitimate purposes.

But it is conceived that the question submitted here is much broader than as stated by counsel for the plaintiffs. It cannot, of course, be questioned that an appropriator may at all times keep his ditch and its essential equipments in such repair as will preserve to him all the waters he has rightfully appropriated and which are required for the legitimate or beneficial purposes to which he applies them. The question presented for solution on this appeal, however, is not whether he may repair his ditches, flumes, and dams or maintain them in proper condition for the purpose of conserving the full measure of water to which he is lawfully entitled by virtue of his appropriation, but whether, as a prior appropriator he may so change or reconstruct his ditch, flumes, and dam as to prevent waters seeping through his ditch from discharging into the original stream from which they were thus taken, after such discharge of such waters has continued uninterruptedly for a period of time sufficient to establish a prescriptive title thereto in one who had actually appropriated and continuously used such seepage waters

23 Cal. App.—38

during all of such period of time. The question thus propounded must, upon sound and well-settled principles, be answered in the negative.

Section 1411 of the Civil Code provides that the appropriation of water must be for some useful or beneficial purpose, "and when the appropriator or his successor in interest ceases to use it for such a purpose, the right ceases." So, in this case, assuming that the plaintiffs and their predecessors had originally appropriated and used all the waters of Gwin gulch under their appropriation, it is clear from the findings that, by permitting a certain quantity of the waters so appropriated to seep through their ditch and return to the gulch and, therefore, to remain unused by them, their right to such percolating waters ceased and became subject to appropriation by subsequent appropriators and the right of the latter to continue in the unmolested use of the same, provided that such waters were not recaptured or reclaimed by the plaintiffs within the period beyond which their right thereto would be barred for nonuser. It is a well settled proposition that it is neither the capacity of the ditch, nor the amount originally appropriated, which determines the rights of an appropriator of the waters of a stream (*Smith v. Hawkins,* 120 Cal. 86, [52 Pac. 139] ; *Senior v. Anderson,* 115 Cal. 496, [47 Pac. 454]), and, as the first mentioned of the cases just cited well says, "If plaintiffs could forfeit their entire right of appropriation by nonuser, equally will they be held to forfeit less than the whole by like failure. . . . No matter," continues the opinion in that case, "how great in extent the original quantity may have been, an appropriator can hold, as against one subsequent in right, only the maximum quantity of water which he shall have devoted to a beneficial use at some time within the period by which his right would otherwise be barred for nonuser." In other words, as is said in *Duckworth v. Watsonville Water & Light Co.,* 150 Cal. 521, [89 Pac. 338, 1 Water & Min. Cas. 140], "an appropriator is entitled only to the water actually taken *and used.*" And it may be observed that it is further said in that case that "a prior appropriator is not entitled to prevent an appropriation or use by others of the surplus of the waters of the lake, if there is any," and this principle applies with equal propriety, we think, to waters seeping from

a ditch and again returning either to the main stream itself
or its tributaries, in which case, as is said by the supreme
court of Colorado, in *Water Supply & Storage Co.* v. *Larimer
& Weld Reservoir Co.,* 25 Colo. 87, [53 Pac. 386], such waters
"become a part of the waters of the stream the same as
though never diverted, and inure to the benefit of appropri-
ators in the order of their appropriation."

From the fact that the plaintiffs in the present case and
their predecessors in interest suffered the seepages from their
ditch to be discharged in the gulch continuously for twenty-
five years prior to the time at which they repaired or recon-
structed their ditch and dam in the year 1907, the conclu-
sion is manifestly inevitable that the waters so returned to
said stream were, during that period, not only not applied
by them to a beneficial or useful purpose, but were not re-
quired or necesssary for the purposes for which they appro-
priated waters from Gwin gulch. It follows that the waters
so escaping from the Waste ditch and again returning to the
stream from which they were diverted into said ditch became
*publici juris,* and were, therefore, open to appropriation, di-
version, and a beneficial use by others, and having been ap-
propriated and for about twenty-five years used and applied
by the defendants to a beneficial purpose, they thus acquired
a vested right or usufruct therein of which they cannot now
justly be divested by the plaintiffs. As before stated, a
prior appropriator undoubtedly has the right to keep his
ditches and their necessary concomitants in such repair as
will enable them fully to perform or accomplish the legiti-
mate purposes for which they were constructed, or he may
change the point of diversion, but this rule is subject to the
qualification that a subsequent appropriator has a vested
right, as against his seniors, to require a continuance of the
conditions existing at the time he made his appropriation,
and if any changes made in the ditch by the senior, either
as to the place of diversion or otherwise, have the effect of
altering those conditions, to the prejudice of a subsequent
appropriator, the latter has just and legal cause to complain.
(See *Handy Ditch Co.* v. *Louden Irr. Canal Co.,* 27 Colo. 515,
[62 Pac. 847, 848], and cases cited in said opinion.)

The cases cited by counsel for the plaintiffs in an attempt
to establish the proposition that waters escaping from the

ditch of a prior appropriator and discharging into the stream
from which they are so taken at a point below the place of
such diversion may not be appropriated by others for a
useful purpose, or that an usufruct therein cannot be ac-
quired by subsequent appropriators, are not applicable to
the facts as found by the court in the case before us. We
cannot, nor is it necessary specially to review all those au-
thorities. It is deemed sufficient to say that they are cases
which deal either with the question whether a person can
acquire a vested right or usufruct in waters escaping from or
seeping through the banks of an artificial watercourse and
discharging into another stream than that from which it is
so diverted or going to waste, or with the question whether
one may acquire a prescriptive title to riparian waters by
adverse user or by estoppel by matters *in pais* under certain
circumstances. As to the first of the propositions thus stated,
and which involves the sole question submitted for decision
in some of the cases referred to by the plaintiffs, it is to be
remarked that it is well settled that where water escaping or
leaking from an artificial watercourse goes to waste by flow-
ing promiscuously over other lands or finds its way to some
other stream than the one from which it is diverted into such
artificial watercourse, a person appropriating such water thus
merely takes the *corpus* and not the usufruct therein. In such
case, having the usufructuary right in such water, the owner
of such ditch or artificial watercourse is at liberty at any
time to change or alter it without invading any vested right
of the appropriator, even though the effect of such change
or alteration must inevitably result in depriving the appro-
priator of the water escaping from such watercourse and
which he has appropriated and used, perhaps for a long
period of time. As is said in *Hanson* v. *McCue*, 42 Cal. 303,
[10 Am. Rep. 299], and approved in *Katz* v. *Walkinshaw,*
141 Cal. 116, [99 Am. St. Rep. 35, 64 L. R. A. 236, 70 Pac.
663, 74 Pac. 766], the owner of an artificial watercourse is
not bound to maintain the artificial stream for the benefit
of those who have appropriated waters escaping therefrom.
And, as was said by Baron Parke, in *Arkwright* v. *Gell*, 5
Mees. & W. 226, wherein the right to the use of appropriated
water pumped from a mine and run off in a ditch, ''the lower
claimant who received and put to use this water would only

have a right to use it, for any purpose to which it was applicable, so long as it continued there. Time would raise no presumption of a grant nor found any claim to a continuance of the discharge; for the mine owner could not bring any action against the person using the water, so as to make him stop using it; and consequently such use did not in any way concern or bind the mine owner. We, therefore, think that the plaintiffs never acquired any right to have the stream of water continued in its former channel.'' In other words, the appropriator merely secures the *corpus* of the water thus escaping as personalty, but does not thereby secure or acquire the right to the continuous flow of such water. This whole question is clearly and fully treated in Weil on Water-rights, 3d ed., sections 51 to 63, inclusive, wherein the author makes a clear statement of the distinction which is recognized between the case of the discharge of seeping water from an artificial watercourse into a place other than the stream from which it is diverted and the case of the return of such water to the stream itself from which the original diversion is made.

As to the cases cited by counsel, treating of riparian rights and the question of how such rights may or may not be divested by prescription or otherwise, it is to be said that; while some of them discuss many of the principles governing such rights and how they may be lost, in none of them is there anything which supports the proposition that a prior appropriator may so change his means of diversion as will have the effect of giving to him more water than he had theretofore habitually taken, where, by such change, he deprives a junior appropriator of a right which he has acquired in the waters of the stream. There is, however, no question of riparian rights involved in this controversy, and the cases last referred to shed little light on the question now before us.

Our conclusion is, as before stated, that the findings are sufficiently supported to render them immune from successful attack, and that the court's conclusions of law therefrom are sound. The defendants were awarded a very small proportion of the waters of Gwin gulch, and, as it is clear from the proofs that they have been and are using said waters for a necessary and beneficial purpose, viz.: the irrigation of

their vineyards, vegetable gardens, and land devoted by them to alfalfa growing, as well as for domestic or household purposes, we think the decree involves a just and equitable adjustment of the respective rights of the parties.

The order is affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 24, 1914.