[Sac. No. 4924. In Bank.—February 25, 1936.]

C. A. CRANE, Appellant, v. J. J. STEVINSON (a Corporation) et al., Respondents.

Treadwell, Laughlin & Treadwell for Appellant.

George J. Hatfield, Fred B. Wood, Norris J. Burke and Richard H. Fuidge for Respondents.

CONREY, J.—The plaintiff is the owner of a tract of land, including particularly sections seven, eight, seventeen and eighteen in township 8 south, range 12 east, in the county of Merced, and riparian to a natural watercourse known as Bear Creek. In bringing this action, besides asserting all the rights of a riparian owner in and to the natural flow of the waters of the creek, plaintiff by his complaint claims to be the owner by appropriation of the right to take, divert and use upon his said land 50 cubic feet per second of water of said creek, and of the right to capture the said water upon his land and to use and enjoy the same thereon, for the irrigation of his land and for the watering of livestock. This action was brought to quiet title of the plaintiff to the right thus claimed by him, and by decree to enjoin the defendants from in any way interfering with the plaintiff in so capturing, possessing, using and enjoying said water.

The particular subject of controversy herein relates to the right of control and use of a part of the stream designated as "foreign water". This is water, not from the natural sources of supply of Bear Creek, but is water which after diversion from another watershed to lands between the place of origin and Bear Creek, has been recovered and turned into the creek at points above the plaintiff's land. The place of

origin of the foreign water is at a point or points of diversion from the Merced River. The intervening territory to which the water was taken is north and east from the plaintiff's land, and is now within the boundaries of Merced Irrigation District. This district, and its predecessor, Crocker-Huffman Land and Water Company, have, for upward of fifty years last past, diverted water from the Merced River to said intervening territory by means of a canal maintained by them, and have created said "foreign water" supply by allowing the surplus and unused water from their canal to drain into the channels of Bear Creek above the plaintiff's land.

Bear Creek empties into the San Joaquin River at a place below and westerly from the plaintiff's land, and several miles above the junction of the San Joaquin with the Merced River. The defendant J. J. Stevinson, a corporation, owns land which lies partly above and partly below the junction of the two rivers, so that it is riparian partly to the San Joaquin River and partly both to the San Joaquin and to the Merced Rivers. It is to be noted, however, that in this action the plaintiff introduced in evidence deeds of conveyance by reason of which he contends that the predecessor of Stevinson conveyed to others all of the riparian rights pertaining to said Stevinson lands.

In February, 1930, there was pending an action between Stevinson, claiming as riparian owner on the Merced River, and Merced Irrigation District, concerning water rights in Merced River. In a settlement between the parties to that action, the district made an agreement (confirmed by decree of the court) to deliver in the channel of Bear Creek, at the district's boundary (which is above the plaintiff's land), a certain quantity of water, and granting to Stevinson the right to take for its own use all the water discharged by the district's operations into the channel of the creek. This included, of course, the "foreign water" to which we have referred. Shortly thereafter, on August 12, 1931, the plaintiff brought this action in order to obtain a determination as to the respective rights of plaintiff and defendants in view of the new conditions thus created. Trial of this action resulted in a decree, from some parts of which the plaintiff appeals.

Defendant East Side Canal & Irrigation Company is the owner of a canal which takes water out of the San Joaquin

River and crosses Bear Creek on the land of plaintiff, and runs to the Stevinson land. The only way Stevinson can take the water released into Bear Creek is through this canal after the water has reached the land of the plaintiff. Defendant Stevinson Water District, a corporation, is a district formed, but not operating, for the purpose of irrigating a part of the Stevinson land.

On July 20, 1931, the East Side Company filed with the division of water rights an application for the appropriation of certain water of Bear Creek. Likewise, on November 5, 1928, certain predecessors of Stevinson Water District filed a like application, and also, on October 12, 1927, other predecessors of Stevinson Water District filed a like application. These proceedings are still unperfected. Under these applications defendants claim both the natural flow and any foreign water in the creek. Since the enactment of the Water Commission Act (Stats. 1913, p. 1012, as variously amended; Deering's Gen. Laws, 1931, Act 9091), acquisition of water rights by appropriation is regulated by the provisions of that law. Among other things, it is provided (sec. 16) that every application for a permit to appropriate water shall set forth certain required facts, including descriptive statements of the proposed use. Section 17 reads, in part, as follows: "Any person, firm, association or corporation may apply for and secure from the state water commission, in conformity with this act and in conformity with reasonable rules and regulations adopted from time to time by the state water commission, a permit *for any unappropriated water or for water which having been appropriated or used flows back into a stream,* lake or other body of water within this state. And any application so made shall give to the applicant a priority of right as of the date of said application to such water or the use thereof until such application shall have been approved or rejected by said commission; provided, that such priority shall continue only so long as the provisions of law and the rules and regulations of the water commission shall be followed by the applicant. . . . " And section 1c of the act says: "No right to appropriate or use water which is subject to the provisions of this act shall be initiated or acquired by any person, firm, association, or corporation except upon compliance with the provisions of this act."

By the decree in this action the validity of the applications above mentioned, as filed with the division of water rights, is affirmed and it is declared that the defendants are the owners, severally, of the inchoate right to appropriate stated quantities of water of Bear Creek, with priority as of the said days of filing; and that said right by appropriation extends both to the natural flow of said creek and to any foreign water abandoned into said creek, but the said right is of no validity as against the plaintiff, so far as the natural flow of said creek is concerned. The aggregate quantity of water included by said "inchoate rights" of appropriation amounts to 239 cubic feet per second of the waters of said creek.

Paragraph VII of the decree herein reads as follows: "That the defendant James J. Stevinson, a corporation, owns and is entitled to carry through the channels of Bear Creek and in the channels of said creek through the lands of the plaintiff and to divert into the canal of the East Side Canal & Irrigation Company, all foreign water which is released by Merced Irrigation District from its irrigation system or any part thereof and/or its drainage system or any part thereof, and/or its seepage and/or run-off from lands situate within the boundaries of said district, and which water is caused or allowed by the district to flow in the channels of said creek down to said western boundary of the district for the purpose of delivery thereof to said defendant James J. Stevinson. Said water so caused or allowed to flow in said channels to said western boundary by Merced Irrigation District for the purpose of delivering the same to said defendant is not abandoned water and is not subject to be captured or appropriated by the plaintiff."

Paragraphs I and II of the decree fully recognize plaintiff's rights as owner of lands riparian to Bear Creek. Those paragraphs read as follows: "I. That the lands of the plaintiff described in the complaint are riparian to Bear creek, and the said plaintiff as the owner of said land is entitled to all of the rights of a riparian owner with respect of the said Bear Creek, and as against the defendants East Side Canal & Irrigation Company, a corporation, and Stevinson Water District, a corporation, is entitled to take, divert and use all of the waters of the natural flow of the said creek upon his said riparian lands; and as against the defendant J. J. Stevinson, a corporation, plaintiff is entitled to make a reasonable use of the

waters of the natural flow of said creek, having due regard to the like right of said defendant to make a like reasonable use of the waters of said creek upon its land riparian thereto. II. That the said riparian right of the said plaintiff does not extend to any water flowing in said creek which has its origin in the Merced River; and particularly does not extend to water diverted from the Merced River by the Merced Irrigation District and discharged into said creek.''

By paragraphs VIII and IX of the decree the court gave recognition to the claims of respondent Stevinson, as owner of land riparian to the San Joaquin River, with the right to make reasonable use of the natural flow of Bear Creek upon its said riparian land, ''having due regard for the like right of plaintiff''. Also the court determined that said Stevinson ''as the owner of lands riparian to the San Joaquin River below the mouth of the Merced river, . . . is entitled to have any of the waters of the Merced river which are abandoned by the Merced Irrigation District into Bear Creek flow down the channel of the said Bear Creek to the San Joaquin River and to the said lands of said defendant, and is entitled to make a reasonable use thereof upon its riparian lands''.

In the light of the issues presented and the decision of the trial court as above set forth, we may now examine appellant's stated grounds of appeal. The several points stated, omitting those which require no discussion, are: (I) That any water which has its origin in the Merced River and is wasted or seeps into Bear Creek is foreign water which the plaintiff, on account of the advantage of position, is entitled to capture and reduce to possession. (II) That the respondents have no right or easement to carry foreign water through the land of appellant in the channel of Bear Creek. (V) That the applications under the Water Commission Act for the appropriation of the water of Bear Creek are of no validity so far as foreign water is concerned. (VI) That the respondent Stevinson Company has no riparian rights, because its predecessor conveyed away all such rights. (VII and VIII) That the respondent Stevinson Company has granted away a large part of its riparian rights by an agreement, dated March 19, 1928, with Southern California Edison Company; and the Stevinson Company has granted away a large part of its riparian rights by an agreement dated the 21st of January, 1929, with the San Joaquin & Kings River Canal & Irrigation Company, Incor-

porated; Miller & Lux, Incorporated, Firebaugh Canal Company, San Luis Canal Company, Columbia Canal Company and Gravelly Ford Canal Company. (IX) That appellant appropriated the water of Bear Creek, including the foreign water therein, prior to the Water Commission Act. (X) The judgment permits the Stevinson Company to recapture water which is in law and fact water of the stream or abandoned water. The foregoing propositions will now be considered in the same order as above stated.

In support of point I, appellant relies chiefly upon the case of *E. C. Horst Co.* v. *New Blue Point Min. Co.*, 177 Cal. 631 [171 Pac. 417], where there are some statements to the effect that foreign water, like wild animals, is subject to seizure by the first person who is in a position to physically seize it, and that the right which the person seizing it acquires is a right in the *corpus* of the water seized, and that he obtains no other right thereto. To like effect appellant cites *Dannenbrink* v. *Burger*, 23 Cal. App. 587 [138 Pac. 751]. Viewed in that light the appropriation or seizure of such water would not confer any right to have the water continue to flow to the point of diversion as in the case of other appropriations. But we find ourselves unable to agree with the proposition that foreign water rights may not be acquired by appropriation. In the Horst case, *supra*, this court, in denying a rehearing (p. 641), made the following reservation: "The court does not construe the opinion herein as deciding the question as to what rights may be acquired in so-called 'foreign waters' as between appropriators, or by prescription." The quoted statement implies recognition of the possibility of appropriation of foreign waters. In view of the later definition of state policy in relation to the conservation and use of water, as expressed in the Water Commission Act, and in the recent constitutional amendment (art. XIV, sec. 3) on that subject, there should remain no present doubt that the so-called foreign waters are now subject to appropriation under the laws of this state. The fact that where such waters have been brought *into* a stream as the result of abandonment by another appropriator there is no way to compel him to continue such abandonment, necessarily affects the value of the subsequent appropriation right, but does not affect the existence of the right, subject to the limitation caused by the nature of the water supply in question. In section 11 of the Water

Commission Act it is provided that all waters flowing in any river, stream, canyon, ravine or other natural channel (with stated exceptions) "is and are hereby declared to be public waters of the state of California and subject to appropriation in accordance with the provisions of this act".

Under point II, appellant admits that Merced Irrigation District has an acquired right to waste water into the channel of Bear Creek. Such water, he says, as soon as it is wasted, becomes abandoned. "Appellant makes no objection to *such* water being abandoned and wasted into Bear Creek; but he contends that the easement which the District acquired by use to waste the water into the channel cannot now be changed, for the purpose of carrying out the agreement made with J. J. Stevinson, a corporation, dated the 29th day of October, 1929, into an easement to carry water for the benefit of that company." It is the rule, of course, that where a right is acquired by use or prescription, the nature of the use cannot be changed so as to render it more burdensome upon the servient tenement. We think, however, that in this instance there has not been any increase in the burden imposed by the easement, which now, as before, consists chiefly of the right to turn into the channel of Bear Creek, above the land of plaintiff, water taken from the Merced River and not absorbed by the use for which it was taken.

Those terms of the decree which affirm the right of Stevinson to carry foreign water through the channel of Bear Creek are supported by the findings, including finding X, wherein it is stated that Stevinson and the district have the right to carry said water in said channel, "and to reclaim the same, but without diminishing the quantity or impairing the quality of other waters flowing in the stream or exceeding the safe carrying capacity of said creek through said land or injuring said land by overflow from the channels or by silting or otherwise, which right they have by virtue of the right granted by section 1413 of the Civil Code of California and the declaration of such right made by the courts of this state prior to the issuance of a patent to said land." Said section 1413 refers to appropriated waters, and reads as follows: "The water appropriated may be turned into the channel of another stream and mingled with its water, and then reclaimed; but in reclaiming it the water already appropriated by another must not be diminished." The provisions

of the decree, affirming the right of Stevinson to have any of said abandoned waters flow down the channel of Bear Creek to the San Joaquin River and to the land of Stevinson, and to make reasonable use thereof upon its riparian land, are limited by the findings, and are to be interpreted in accordance therewith. The rights of Stevinson, as thus affirmed, are not affected or diminished by the fact that the channel of Bear Creek, considered as land, is part of the land belonging to appellant. To hold that they are so affected or diminished, would be inconsistent with the admitted right, acquired as hereinabove stated, to have the said "foreign waters" flow down the channel of Bear Creek.

Referring to appellant's point V, that the applications under the Water Commission Act for the appropriation of the water of Bear Creek are of no validity so far as foreign water is concerned, he insists that the Water Commission Act applies to natural water of streams, and not to foreign water. In our discussion of point I, we have reached the opposite conclusion on this question.

Next it is contended (point VI) that respondent Stevinson, a corporation, has no riparian rights, because its predecessor conveyed away all such rights. The predecessor of J. J. Stevinson, a corporation, was J. J. Stevinson, a natural person, who in December, 1903, conveyed to the corporation the riparian lands hereinbefore mentioned as owned by said corporation. In November, 1886, Mr. Stevinson had recorded a notice of appropriation of 300 cubic feet per second of the water of the San Joaquin River. In March, 1898, he executed to East Side Canal and Irrigation Company the deed which appellant here contends was a conveyance of all his riparian rights as owner of the land now owned by respondent Stevinson, a corporation. The property conveyed by this deed was therein described as being "all right, interest or estate, in, to or to take water from the San Joaquin River, also to any water appropriated by said party of the first part, by written notice or by actual diversion, or otherwise; also all rights, interest and estate now in and to any water flowing or which may hereafter flow in the said San Joaquin River, which has been acquired by the party of the first part in any manner whatever, including all rights, interests, estates and privileges which may grow out of, or result from any act or thing done or performed by the said party of the first part, or by any

other person in his behalf''. ⁊ It should be noted that this deed omits any reference to land owned by the grantor, or to any riparian rights belonging to him as a landowner. On the other hand, it directly mentions his water rights as an appropriator. It does contain some more general words of description which might cover all rights of the grantor to waters flowing in the river, acquired by him ''in any manner whatever''. But this does not necessarily include, and we think that it never was intended to include, the riparian rights which were only incidental and pertaining to his ownership of riparian lands. Furthermore, in subsequent grants the Stevinson corporation was at pains to preserve unaffected the riparian rights which it is fair to assume it had theretofore retained.

Respecting appellant's points VII and VIII, we are likewise convinced that there is no merit in those propositions, wherein appellant contends that respondent Stevinson has granted to others ''a large part of its riparian rights''. Although the court (see finding IV) specifically declined to apportion the water of the natural flow of Bear Creek between the lands of appellant and the lands of Stevinson, nevertheless, by reason of the adjudication herein, allowing to Stevinson as well as to appellant the status of riparian owner, each in relation to his own land, appellant fears that in any subsequent action between him and Stevinson to enforce riparian rights, the apportionment would not be made, as it should be ''in accordance with the actual rights which the respondent really owns after the conveyances aforesaid''. In view of the reservation made by the court, as above noted, we think that the decision and decree herein would not estop appellant from complete maintenance in any such subsequent action, of all his rights as riparian owner, in relation to the natural flow of the stream or streams to which his land is riparian. The question of the proportion of such waters to which the several parties are entitled, having been directly withdrawn by the court by the very terms of its decision, that question is out of the case. And in fact it never was a substantial element in the present controversy.

Appellant contends (point IX) that he appropriated the water of Bear Creek, including the foreign water therein, prior to the Water Commission Act. On this issue of fact, tendered by appellant's amended complaint, the court (find-

ing IV) made some statements of evidentiary facts, followed by a finding of ultimate fact, viz., that plaintiff did not appropriate any water of Bear Creek, and is not the owner of any right therein acquired by appropriation, ''except that he has the right to make such use thereon of the waters of the natural flow of said Creek as he may be entitled as riparian owner of said land riparian to said Creek''.

The burden was upon appellant, to establish by sufficient evidence the fact of appropriation by him, and the quantity of water appropriated and applied by him to beneficial use upon his land. (*Northern Cal. Power Co.* v. *Flood*, 186 Cal. 301, 303 [199 Pac. 315].) On this issue plaintiff's evidence is defective and incomplete. It fails to show the quantity of water diverted by plaintiff from Bear Creek, or how much, if any, of the water taken by him from the main canal of East Side Canal Company was water derived from Bear Creek. It fails to show how much, if any, of the water taken by him out of Bear Creek was taken as an appropriator and not in the exercise of his rights as a riparian owner. ■
Since the effective date (year 1913) of the Water Commission Act, an intending appropriator has been required to file his application with the water commission (now the division of water resources). This the plaintiff did not do. To sustain his claim, the appropriation made by him must have been actually complete at some time prior to said 1913 date, and even that is not sufficient if the evidence shows a subsequent failure to maintain the beneficial use for the period of time prescribed by the statute, or for the period of time, five years, required under decisions prior to the statute. (Water Commission Act, sec. 20a, Deering's Gen. Laws, 1931 ed., Act No. 9091; Civ. Code, sec. 1411; *Smith* v. *Hawkins*, 110 Cal. 122 [42 Pac. 453]; *Smith* v. *Hawkins*, 120 Cal. 86 [52 Pac. 139]; *Lindblom* v. *Round Valley Water Co.*, 178 Cal. 450 [173 Pac. 994].) We conclude that the findings on this issue are sustained by the evidence.

■  Finally appellant suggests that the decree is erroneous in that it permits respondent Stevinson to recapture water which is in law and in fact water of the stream, or abandoned water. This refers to paragraph VII of the decree, which affirms the right of Stevinson to carry through the channels of Bear Creek and into the canal of the East Side Canal and Irrigation Company all *foreign* water which is released by the

district from its irrigation or drainage system, or is seepage or run-off from lands within said district, and which water is caused or allowed by the district to flow in the channels of Bear Creek down to the western boundary of the district for the purpose of delivery thereof to Stevinson.

It will be noted that the reference here is to "foreign water", and that this foreign water, as distinguished from water naturally flowing in the creek, is principally if not entirely composed of water which came into this territory after diversion from the Merced River. This objection of appellant, therefore, merely presents in another form appellant's attack upon the right of respondents to reclaim and utilize these foreign waters after the long period of their abandonment. The decision which we have announced upon the other grounds of appeal, particularly with reference to the right to reclaim such waters, necessarily leads to the conclusion that this last point is without merit. In addition it is suggested by respondents, and we think correctly suggested, that the water in question is not foreign water with respect to all of the lands of respondent Stevinson. Nearly twenty-six hundred acres of that land has frontage on the San Joaquin River below its junction with Merced River. Consequently that land is riparian to the Merced River as well as to the San Joaquin and its tributaries. It was for this reason that the court determined in its decree that respondent Stevinson is entitled to have any of the waters of the Merced River which are abandoned by Merced Irrigation District into Bear Creek, flow down the channel of the said Bear Creek and to the lands of said defendant, and is entitled to make reasonable use thereof on its riparian lands.

In *Holmes* v. *Nay*, 186 Cal. 231 [199 Pac. 325], the plaintiffs were lower riparian owners on a main stream, and the defendant was taking water from the main stream and using a portion of it on his riparian land in the watershed of a tributary stream. Of this the court held the plaintiffs could not complain saying: "Both watersheds are but parts of the watershed of the stream as it passes the plaintiffs' lands, and the rule that the owner of a tract of riparian land may not convey and use the water without the watershed of the stream has no application. The water is not conveyed and used without the watershed of the stream which passes the plaintiffs' lands, and that stream is the stream in which the plaintiffs have

rights. They have no rights in the main stream and the branch above as separate streams. The situation is the exact converse of that presented in *Anaheim etc. Co.* v. *Fuller*, 150 Cal. 327 [88 Pac. 978, 11 L. R. A. (N. S) 1062], where the junction of the stream and the branch was below the lands of the complaining riparian owner. Any other rule would be wholly impracticable and would, in many cases, practically destroy the riparian rights of an upper owner.'' (186 Cal., pp. 240, 241.) In *Southern Cal. Investment Co.* v. *Wilshire*, 144 Cal. 68 [77 Pac. 767], wherein the plaintiff was a riparian proprietor, it appeared that notwithstanding the diversion of the water from the stream by the defendants and its use upon their lands for irrigation, a part thereof again reached the stream and the point of diversion of the plaintiff. Of this feature the court said: ''The plaintiff has riparian rights in the stream, and this right extends to all the water flowing in the stream through its lands, including that which the defendants allowed to escape, and which seeped into the stream after being used for irrigation, as well as that which flows in the stream in excess of the increase thus received'' (p. 73). We agree with respondents that the principle thus announced applies to the so-called foreign water which is the subject of this controversy, and that respondent Stevinson has riparian rights thereto; also that as to such waters appellant has no claim, his land being riparian solely to Bear Creek and hence foreign to Merced River waters flowing towards the San Joaquin River.

After careful consideration of appellant's stated grounds of appeal, we conclude that the findings are sustained by the evidence and are in law sufficient to support the judgment.

The judgment is affirmed.

Waste, C. J., Shenk, J., Curtis, J., Thompson, J., Langdon, J., and Seawell, J., concurred.