[L. A. No. 16494. In Bank.—December 26, 1940.]

HARRISON R. WARD, Appellant, v. CITY OF MONROVIA (a Municipal Corporation) et al., Respondents.

Alvan M. Palmer, Laurence B. Martin, Earl G. Read, Hewitt & Anderson and Samuel Reisman, for Appellant.

Paul F. Garber, City Attorney, W. H. Anderson, A. G. Ritter and Walter F. Dunn for Respondents.

THE COURT.—The plaintiff brought an action against the City of Monrovia and others to quiet title to waters which he alleged were riparian to his lands but which were wrongfully diverted by the defendants within five years prior to the filing of the complaint. By a separate action against the same defendants the plaintiff sought to quiet title to a one-fourth interest or share in waters flowing or developed in a certain tract of land belonging to the City of Monrovia, and which adjoins the plaintiff's land. The defendants, City of Monrovia, L. L. Bradbury & Co., and Bradbury Estate Company, answered in each action setting forth certain claims adverse to those of the plaintiff. The actions were consolidated for trial, which resulted in findings and judgments for the defendants. The plaintiff appealed from the judgments and the appeals are presented on a single record.

The plaintiff is the owner of the N. E. quarter of section 13, township 1 North, Range 11 West S. B. M. The waters claimed to be riparian to the plaintiff's land arise in section 7, which is northeast of the plaintiff's property, and which is owned by the City of Monrovia. Those waters flow through what is known as Sawpit Canyon. That canyon traverses the north and northwest portion of the plaintiff's property and continues into and through other property of the city to the west of the plaintiff's land. The waters as to which the plaintiff claimed a one-fourth interest were developed in Maple Canyon on land north of the plaintiff's land, and join the waters of Sawpit Canyon a short distance south of the plaintiff's north boundary line. The waters from both sources are conducted through a pipe line and reservoir system constructed by the city to a point on its property west of the plaintiff's land, known as the Five Point Weir. At this point 10/11ths of $\frac{1}{5}$ of the waters are diverted by each of the Bradbury interests, and the balance by the city for domestic and other municipal uses. The water taken by the Bradbury defendants is conducted for beneficial uses on 666 acres of land located about 2 miles from the Five Point Weir.

The plaintiff acquired his quarter section in 1914. At that time the city's so-called mountain water system was in exist-

ence, whereby all the waters flowing in Sawpit and Maple Canyons, with the exception of the overflow in the rainy seasons, was diverted. That part of the system which includes Sawpit Canyon had been in existence since about 1890, when the city acquired the rights and easements pertaining thereto, including the rights and easements over the plaintiff's land. The plaintiff's testimony indicates that he had personal knowledge of the existence of the system and the diversion and utilization through it of all the waters of Maple and Sawpit Canyons at least as early as 1922; that in 1925 or 1927 he went over some of the ground with and was informed of the extent of the system by the city engineer of the City of Monrovia, and that he then learned that the rights and easements had existed for many years prior thereto. The plaintiff testified that the only available water for his use in any season of the year prior to the construction by the city of a flood control dam at the western boundary of his property, was water which he obtained from the city's hydrants with its permission.

In 1932 the plaintiff received a quitclaim deed to a one-fourth interest in and to the waters of Maple Canyon. He testified that he had visited the Maple Canyon property previously when he went over the ground with the city engineer, and that before he acquired the quitclaim deed he was informed of the city's use of the waters of Maple Canyon since about the year 1895.

The country through which the waters of Maple and Sawpit Canyons are collected is mountainous, rough and not easily traversed. The city over a long period of years has developed trails for use in making repairs to the system. The system existing before 1930 developed such a state of disrepair, however, that in that year it was reconstructed and new pipe was laid to replace the old. The record shows that after reconstruction of the system the old and new pipe lines were four or five feet apart in a few places and that in one such instance the change was due to the fact that the plaintiff built a roadway paralleling the line of the old pipe, which necessitated a shift of five feet in the location in order to obtain a footing for the new pipe. The new pipe on the plaintiff's land was of the same size and capacity as the old, but in some parts of the line concrete pipe was replaced by riveted steel pipe.

The plaintiff filed his complaints in these actions in November, 1933. The trial court found that not more than ten acres of the plaintiff's land riparian to Sawpit Canyon was suitable for residence purposes, or for cultivation, or was capable of irrigation from the waters of that canyon. It found adversely to the claims of the plaintiff based on his alleged use of the waters of Sawpit Canyon, claimed to have been abandoned for more than five years prior to the filing of the complaint by reason of the state of disrepair of the city's mountain system. It also found that the entry of the city on the plaintiff's land for the construction of pipe line had been pursuant to legal rights acquired many years prior to the plaintiff's acquisition of his quarter section. The court found that for more than forty years prior to the filing of the complaint, by means of tunnels, pipe lines, and other works, constructed pursuant to such legal rights, all the waters were taken and extracted by the city from Sawpit Canyon and were conveyed by it in such manner and to such extent that from and after the construction of the diversion works none of the waters of the stream flowed or now flow in the natural channel of the stream upon the lands of the plaintiff, with the exception that during rainy seasons some of the waters have flowed in the channel in excess of the intake capacity of the diversion system and have been unappropriated and unused by the city. The court did not decide the rights of ownership in such so-called surplus waters, but it did find that the rights of the city to divert all the waters to the capacity of its system was not lost nor diminished by any act of non-use alleged by the plaintiff, and that the plaintiff had no right to any of the waters of the stream, with the possible exception of the surplus waters, as to which the court made no adjudication.

It was also found that each of the defendants, L. L. Bradbury & Co. and Bradbury Estate Company, was entitled to the use of 10/11ths of $\frac{1}{5}$ of the waters diverted through the city's diversion system, and that the City of Monrovia was entitled to the use of all the remainder of such waters; that the proportion of the waters diverted and used by the Bradbury interests was founded upon a claim of right existing for more than fifty years prior to the commencement of the action.

The court also found that the city was entitled to a perpetual easement and right of way in certain strips of land

for trail purposes to permit access to its entire pipe line system on the plaintiff's land, and which had been used by it under prescriptive right for more than forty years; that this right of way existed on the land at the time the plaintiff acquired his title, and "is a thoroughly well-established and known right of way and is thoroughly well-known to the plaintiff." The court found the location of the easements over the plaintiff's land by a particular description of the courses and distances of the center line of three strips, each ten feet wide, and one strip twenty feet wide, and adjudged that the edges of the pipe line or lines and trails should at no place extend beyond the limits of the described strips of land.

In the action brought by the plaintiff to quiet his alleged title to one-fourth of the waters of Maple Canyon, the court found that the city was the owner of the land through which the Maple Canyon waters mainly flowed, and that it was the owner of and entitled by prescriptive right to divert and use all the waters flowing or developed in said canyon to the capacity of its pipe line system with the exception that each of said Bradbury interests was entitled to the possession and use of 10/11ths of $\frac{1}{5}$ of said waters. It refrained from adjudicating any rights in the surplus waters, which it defined as the waters in excess of the intake capacity of the city's system.

The plaintiff contends that the findings are not supported by the evidence in several particulars.

■■ (1) He claims that the evidence shows that the city had lost its prescriptive rights to the use of all the waters of Sawpit and Maple Canyons by a non-user for a period of over five years of a portion of said waters, and by a change in the location of the pipe line. The plaintiff bases his claim of non-user by the city on the state of disrepair of the system prior to its reconstruction and replacement by reason of which it is claimed that some of the waters leaked through the pipe line and flowed down the natural channel to the plaintiff's land. The evidence is sufficient to support the city's right to divert all of the waters. By the use herein of the term "all of the waters", no inclusion of the surplus waters as defined by the trial court is intended. The burden was on the plaintiff to prove his right to the use of any part of the waters seeping through the system and claimed to have been abandoned by the city. (*Lema* v. *Fer-*

*rari,* 27 Cal. App. (2d) 65, 73 [80 Pac. (2d) 157].) There is no evidence of non-user to the extent that it may be said the city's prescriptive right to divert all such waters had been lost by abandonment. On the contrary, the evidence shows that the city had been diligent in making repairs, and that only when the state of the system indicated that repairs would no longer be an economical method of maintaining it, replacement and reconstruction of the system was undertaken. The facts, therefore, are not such as to call forth the application of the doctrine successfully invoked in the case of *Dannenbrink* v. *Burger,* 23 Cal. App. 587 [138 Pac. 751]. Here there was no seepage of water from the city's diversion and pipe line system which continued uninterruptedly for a period of time sufficient to establish a prescriptive title in one who had actually appropriated or used such escaping waters.

■ It is also contended that the change in the place of location of the pipe line in a few places forfeited the city's prescriptive easement to maintain the pipe line on the plaintiff's land. There was not such a substantial deviation in the place or alteration in the use and enjoyment of the easement as would call for the application of the cases relied on by the plaintiff. Such cases as *Allen* v. *San Jose Land & Water Co.,* 92 Cal. 138 [28 Pac. 215, 15 L. R. A. 93] ; *Joseph* v. *Ager,* 108 Cal. 517 [41 Pac. 422] ; *North Fork Water Co.* v. *Edwards,* 121 Cal. 662 [54 Pac. 69] ; *Vestal* v. *Young,* 147 Cal. 715 [82 Pac. 381] ; *Winslow* v. *City of Vallejo,* 148 Cal. 723 [84 Pac. 191, 113 Am. St. Rep. 349, 7 Ann. Cas. 851, 5 L. R. A. (N. S.) 851] ; *Felsenthal* v. *Warring,* 40 Cal. App. 119 [180 Pac. 67], are to the effect that the nature of the enjoyment measures the extent of the rights under a general grant or a prescriptive easement, and precludes a subsequent alteration in or deviation from the place, mode or manner of its enjoyment. (See, also, 1 Wiel on Water Rights, 3d ed., sec. 581; *Scott* v. *Fruit Growers Supply Co.,* 202 Cal. 47 [258 Pac. 1095] ; *Anderson* v. *Southern Cal. Edison Co.,* 77 Cal. App. 328, 335 [246 Pac. 559].) The same cases, however, affirm that the change must be material either in the nature or the extent of the servitude imposed. ■ Those cases (see, also, *Ware* v. *Walker,* 70 Cal. 591 [12 Pac. 475] ; Jones on Easements, secs. 811, 826, 828, 830), likewise state the well recognized rule that an express or implied grant of an easement carries with it certain secondary easements essential to its

enjoyment, such as the right to make repairs, renewals, and replacements. Such incidental easements may be exercised so long as the owner thereof uses reasonable care and does not increase the burden on or go beyond the boundaries of the servient tenement, or make any material changes therein. In such cases it has been recognized that an insubstantial change in the location of the means of diversion will not destroy the easement. In this case, wherever the location was shifted, it is not shown that the pipe line was placed on land over which the defendant had no right whatever. The trial court found on substantial evidence that the defendant city was entitled to the use of said ten and twenty foot strips in the enjoyment of its easements for the location and maintenance of its pipe line, and limited the city's right to lay pipe within the confines of such strips. The defendant was within the prescribed limits when it reconstructed the pipe system. The evidence shows that it has not appropriated any land of the plaintiff different from that to ·which its easements attached within the meaning of the holding in the cases of *Vestal* v. *Young* and *Felsenthal* v. *Warring, supra.* The city, therefore, has not occupied any property to which it was not entitled.

(2) █ The plaintiff contends that the court should have awarded him under his quitclaim deed a one-fourth interest in the waters of Maple Canyon. He bases this claim on the rule that the possession of one tenant in common is deemed to be the possession of all the tenants in common and is presumed not to be adverse or hostile unless actual notice of hostile and adverse possession is brought home to the other tenants, relying on *Johns* v. *Scobie,* 12 Cal. (2d) 618 [86 Pac. (2d) 820, 121 A. L. R. 1404]. He contends further that the evidence is that the possession and the diversion by the defendants of all the waters of Maple Canyon to the extent that use of such waters was not available to a co-tenant except from the city's system and by its consent, was not adverse or hostile to the plaintiff or his predecessors. There is no merit in the contention. It cannot be questioned that the trial court was justified in concluding that the defendants' diversion of all the waters of Maple Canyon was adverse to the plaintiff and his predecessors in interest and that they had actual knowledge that such use was hostile and was intended to exclude the exercise of their rights to the use of such waters. In the case cited it was held that

the evidence was sufficient to show knowledge in the other co-tenants of the plaintiff's prescriptive claim or right. The evidence in the present case indicates that the same result must follow.

(3) ■ It is urged that as to the plaintiff the Bradburys were lower appropriators and that their use of the waters taken at the Five Point Weir did not invade the rights of the plaintiff as an upper riparian owner; that the agreement between them and the city amounted to a relinquishment of a portion of the city's rights, which was beyond its powers to do; therefore, that the plaintiff is entitled to the proportion of the waters diverted by the Bradbury interests to non-riparian lands. The evidence, however, fully supports the trial court's findings and conclusions that the right of the Bradburys as appropriators of some of the waters involved originated ten years prior to the acquisition of any usufructuary rights acquired by the city, and that the agreement for division of the waters at the Five Point Weir was merely in recognition of the Bradburys' superior rights as appropriators of those waters; that the Bradburys' rights were also based on prescriptive rights adverse to the riparian rights of the plaintiff's predecessors. It is a reasonable conclusion from the evidence that the basis of appropriative or prescriptive rights of the Bradburys was an invasion of and adverse to the riparian rights of the plaintiff's predecessors. The doctrine invoked by the plaintiff and stated in *Pabst* v. *Finmand*, 190 Cal. 124, at page 128 [211 Pac. 11], is therefore unavailing. The plaintiff's predecessors had lost any rights which at one time might have been deemed superior to the Bradbury's claim of right, and the plaintiff has acquired no more than his predecessors had. This condition of the record is a complete answer to the plaintiff's contentions on this question.

(4) ■ The plaintiff also contends that the court should have apportioned the waters in proportion to each party's right thereto. It is doubtful that the court could have settled the dispute more specifically. The requirement referred to, namely, that the court should have declared the quantity of water to which each party was entitled (see *Riverside Water Co.* v. *Sargent*, 112 Cal. 230 [44 Pac. 560]; *Willits Water & Power Co.* v. *Landrum*, 38 Cal. App. 164 [175 Pac. 697]), is not applicable where, as here, the defendants were entitled to all the disputed waters. Since the plaintiff, there-

fore, was not entitled to any part of the waters, a more specific finding was unnecessary.

■ There is no merit in the contention that the case of *Bazet* v. *Nugget Bar Placers, Inc.*, 211 Cal. 607 [296 Pac. 616], has a controlling force favorable to the plaintiff. There was no showing herein that the appropriators were wasting the waters diverted by them. On the contrary, the record supports the conclusion that all the water diverted by the city and the Bradbury interests has been and is devoted to beneficial uses, and that all thereof was and is reasonably necessary for such uses. The judgment of the court is in conformity with the precepts of the 1928 amendment adding section 3 to article XIV of the Constitution, and with the interpretation and application thereof as declared in the recent cases of *Gin S. Chow* v. *City of Santa Barbara*, 217 Cal. 673 [22 Pac. (2d) 5], and *Peabody* v. *City of Vallejo*, 2 Cal. (2d) 351 [40 Pac. (2d) 486].

The judgments are affirmed.