**UNITED STATES of America,
Appellant,**

v.

**373.10 ACRES OF LAND, MORE OR LESS, Situated IN CRITTENDEN AND POINSETT COUNTIES, ARKANSAS, et al., Appellees.**

**No. 72-1714.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 13, 1973.

Decided Aug. 23, 1973.

---

Peter R. Steenland, Atty., Dept. of Justice, Washington, D. C., for appellant.

G. D. Walker, Jonesboro, Ark., for appellees.

Before MEHAFFY, Chief Judge, and BRIGHT and ROSS, Circuit Judges.

MEHAFFY, Chief Judge.

This is a permissive interlocutory appeal under 28 U.S.C. § 1292(b) and Fed.R.App.P. 5 from a pretrial order in a condemnation proceeding brought by the U. S. Army Corps of Engineers in the United States District Court for the Eastern District of Arkansas. The order that is the subject of this appeal denied the government's motion to confirm that the United States already held title to the interests it was seeking to condemn. In this appeal the government claims that it holds title to the interests in dispute by virtue of an assignment made to the United States in 1939. The landowners concede that an assignment was made but deny that the assignment conveyed as broad an interest as the government now claims. For the reasons stated below we affirm the order of the district court.

Sometime prior to 1938 the U. S. Army Corps of Engineers and certain local Arkansas drainage districts agreed to engage in a joint flood control project in Eastern Arkansas. A portion of this project called for the widening and deepening of the channel of the Tyronza River. Prior to the commencement of any actual construction work on the Tyronza River portion of the project, the local drainage authorities obtained an agreement whereby the riparian landowners promised:

> " . . . to furnish without cost any land now owned or [which] may be acquired by them necessary for use in connection with [the] above mentioned project and [to] hold and save the said drainage districts and the United States Government free from liability for damages resulting from the aforesaid construction."

After obtaining this agreement the local drainage districts assigned to the United States all the interests they had received under the agreement. Shortly after this original assignment the Corps of Engineers entered the lands in question and performed the construction work. At

the time the drainage work was completed apparently all parties were satisfied. Nothing further occurred for more than twenty-five years. In 1965, however, the Corps of Engineers sought to re-enter the landowners' property to perform dredging work on the channel and to clear the banks along the original route of the project. The landowners protested the re-entry and the government filed the condemnation action that is presently before us.

The sole issue at this stage of the proceeding is whether the landowners' agreement quoted above granted a perpetual drainage easement or was instead merely a promise in the nature of a hold harmless agreement limited to the original construction of the project. If, as the government contends, a perpetual drainage easement was granted, then the United States would normally have a limited right of re-entry for the purpose of repairing and maintaining the drainage project within the boundaries of the original construction. If, on the other hand, the agreement was merely a hold harmless promise limited to the original construction, then the government would normally have no right of re-entry for any purpose even within the boundaries of the original project.

The evidence introduced by the parties in the district court can be easily summarized. The government introduced a copy of the landowners' agreement and copies of the assignments by which the United States acquired the drainage districts' rights under the landowners' agreement. The government then focused the remainder of its proof on testimony tending to show that the re-entry in 1965 had not exceeded the boundaries of the original 1939 construction. The condemnees focused their case on first hand landowner testimony to the effect that the landowners had agreed to the entry in 1939 only on assurance by the drainage districts and the federal government that they only wanted "a temporary easement to dredge out the river."

At the conclusion of the proof and argument the district court made the following oral findings:

"[T]he Court is of the opinion that . . . the Government has the burden on this issue, and that is to show what they acquired when they obtained . . . the drainage districts' rights.

"It may be, as [the government] argues, that . . . implicit in any right to clean a ditch is some perpetual right to go back in and maintain it, but I cannot believe that that is the situation.

"I believe many drainage districts and other projects are organized solely for the[ir] original purpose, and that it is . . . easy to set forth by language the fact that it is intended to be perpetual or make some indication that it is a perpetual right [that has been conveyed].

"Here you do have some . . . indication that the district was assigning to the Government, or intended to assign the Government, some perpetual rights . . ., but they couldn't assign anything more than they got; . . . the Court has to look then to the voluntary conveyance, [the landowners' agreement].

"I just don't think a fair interpretation would indicate that these people were giving a permanent easement to go in there and maintain an improvement over all those years."

"And, of course, the new easement that the Government [now claims title to] is clear. It says to 'construct, operate and maintain,' and it mentions a perpetual and assignable right and easement; whereas [the landowners' agreement] was such an informal arrangement, it looks like they just wanted to clean out the outlet to the drainage district.

"Of course, the evidence is quite clear the drainage district didn't touch it thereafter, the Corps of Engineers

**534**

didn't touch it thereafter, . . . nobody touched it thereafter until 1965. So I am taking the view that the Government is condemning something that they have not acquired here from the drainage districts [by assignment of their rights under the landowners' agreement] . . . and that, therefore, they are going to have to compensate the landowners for the value of what they have taken." Transcript pp. 48–50.

In this appeal the government does not contend that the district court's findings of fact were clearly erroneous. Instead, the government argues that the district court erred in its application of the law by failing to recognize that a drainage easement necessarily carries with it an implicit right of re-entry for repair and maintenance of the drainage path. In support of this proposition the government cites numerous authorities. *E. g.*, Ward v. City of Monrovia, 16 Cal.2d 815, 108 P.2d 425 (1940); Nixon v. Welch, 238 Iowa 34, 24 N.W.2d 476 (1946).

Even if we assume that these cases accurately express Arkansas' law of easements, we cannot agree that the cases are applicable to the controversy before us. Each of the cases cited by the government involved disputes over the extent of the right of re-entry for maintenance and repair where the existence of a perpetual easement was already established. These cases, therefore, assumed the very fact that is the center of this dispute, *i. e.*, whether there was a grant of any perpetual easement at all.

The primary authority for determining whether or not a perpetual easement was granted is the language of the agreement itself. The language of the agreement, however, does not conclusively establish on its face the permanence or temporality of the rights that the landowners conveyed. We must therefore look to the circumstances surrounding the transaction to determine the nature of its true meaning. *See, e. g.*, Restatement of Property § 483.

Four factors persuade us that the district court was correct in holding that no permanent easement was conveyed by the landowners' agreement. First, the conveyance by the landowners was essentially gratuitous in nature, and it would therefore be inequitable to expand the scope of the landowners' gift beyond that reasonably contemplated by the language of their grant. *See* Restatement of Property § 483, comment g. Second, the drainage districts and the federal government had far greater experience and skill in dealing with the creation of easements than did the landowners. If the government and the drainage districts were in fact seeking a perpetual easement in 1938 it seems likely that they would have taken the fairly simple step of using language that would have assured the desired result. Third, there is nothing about the nature of the construction work done by the government that would tend to place owners or potential buyers on notice that future maintenance was contemplated. Fourth, the subsequent inaction of the parties strongly suggests that no part of the original plans had contemplated an on-going program of repair and maintenance of the river channel.

After reviewing the record carefully we feel compelled to agree with the district court. The government had the burden of proof on its motion to confirm title. The only proof introduced by the government was documentary evidence of the landowners' agreement and its assignment. The government made no effort to challenge the condemnees' testimony regarding the agreement, and it did not attempt to show any circumstances that would tend to show a perpetual easement had been intended by the parties. In short, the government simply failed to meet its burden of proof.

The order of the district court is affirmed and the cause is remanded for further proceedings in conformity with this opinion.