[Sac. No. 5282.   In Bank.—August 21, 1940.]

GEORGE S. BLOSS, Jr., Respondent, v. MAMIE F. RA-
HILLY et al., Appellants.

F. M. Ostrander and Louis L. Bernheim for Appellants.

H. K. Landram, Edward F. Treadwell and Russell E. Barnes for Respondent.

SPENCE, J., *pro tem.*—Plaintiff sought by this action to have his rights determined in and to the natural flow of Duck Creek, sometimes known as Duck Slough, and in and to certain foreign waters flowing in said creek; to obtain an injunction enjoining defendants from interfering with said rights; and to recover damages for such interference. Plaintiff had judgment upon a trial by the court sitting without a jury. Defendants appeal from said judgment.

Plaintiff is a lower riparian owner and defendants are upper riparian owners upon said Duck Creek which is a continuation of Mariposa Creek. This watercourse has its source in the foothills of Mariposa County and flows in a general westerly and southwesterly direction through the county of Merced and into the San Joaquin River. The natural flow of said creek ordinarily starts in November of each year and continues into the late spring or early summer of the following year depending upon the amount of rainfall. Such natural flow has been known to cease as early as April in some years and to continue as late as July in other years.

In recent years the flow of said creek has been increased and water has flowed therein during the summer months as the result of the introduction into the watershed of certain foreign waters. These last-mentioned waters have been brought from the Merced River and have found their way into Duck Creek above the lands of plaintiff and defendants

through seepage and wastage from the reservoirs, canals, and ditches used in the operations of the Merced Irrigation District. Said district was formed in 1921 and water was first stored in its reservoirs in 1926. On March 21, 1927, plaintiff made application to the Division of Water Rights to appropriate twenty second feet of said water for use upon his lands. A permit was thereafter issued to him on July 27, 1927, and the final license was issued to him on March 5, 1935. Since making the original application, plaintiff has beneficially used all of said water available to him up to twenty second feet. Defendants have likewise used some of said water during some of that time.

In 1932, the El Nido Irrigation District built a dam across the stream above the lands of plaintiff and defendants and, purporting to act under some arrangement with the Merced Irrigation District, the so-called El Nido diversion commenced whereby some of the foreign water was diverted from the stream. Since that time there has been only approximately $2\frac{1}{2}$ to 4 second feet of foreign water in the stream. Plaintiff herein brought an action to enjoin the above-mentioned El Nido diversion and while it appears that said action was tried, our attention has not been called to anything in the record showing the result thereof. Another action was brought by the East Side Canal and Irrigation Company against numerous persons, including all the parties to the present action, seeking to have determined the rights of all of said parties in and to the waters of Duck Creek and to enjoin the claimed diversion of said waters by the said parties in excess of their rights as determined by the court. In that action, all parties to the present action filed answers setting up their claimed rights in and to the waters of said Duck Creek. Plaintiff herein and defendants herein claimed rights in that action both as riparian owners and as appropriators. The trial court in that action found and decreed that plaintiff herein, George S. Bloss, Jr., owned certain lands riparian to Duck Creek and was entitled to all the rights of a riparian owner with respect to said creek; that he was also the owner of the right to appropriate 20 cubic feet of water per second of the water of said creek for the irrigation of his lands; that defendants herein, Mamie F. Rahilly and Peter Rahilly, Jr., owned certain lands riparian to Duck Creek and were entitled to all the rights of riparian owners but that none of their ripa-

rian rights extended to any water in said creek which had its origin in the Merced River; and that they were not the owners of the right to any of the waters of said creek by appropriation. Said judgment was entered but it had not become final during the pendency of the present action in the trial court. Said judgment has since become final and plaintiff herein has made a motion to dismiss the present appeal upon the ground that said judgment finally adjudicated the issues involved herein. In support of said motion, plaintiff cites and relies upon *Miller* v. *Thompson*, 139 Cal. 643 [73 Pac. 583], but owing to our conclusion that the judgment herein must be affirmed upon the record before us, we deem it unnecessary to pass upon said motion.

Defendants took this appeal from the entire judgment but they attack only the portion thereof dealing with foreign water. Before discussing the contentions of defendants herein, it is appropriate to state that it is settled in this jurisdiction that so-called foreign waters are subject to appropriation. In *Crane* v. *Stevinson*, 5 Cal. (2d) 387, this court said at page 394 [54 Pac. (2d) 1100], ''In view of the later definition of state policy in relation to the conservation and use of water, as expressed in the Water Commission Act, and in the recent constitutional amendment (art. XIV, sec. 3) on that subject, there should remain no present doubt that so-called foreign waters are now subject to appropriation under the laws of this state. The fact that where such waters have been brought into a stream as the result of abandonment by another appropriator there is no way to compel him to continue such abandonment, necessarily affects the value of the subsequent appropriation right, but does not affect the existence of the right, subject to the limitation caused by the nature of the water supply in question.''

The complaint in this action contained two counts. The first count was based upon plaintiff's riparian rights in the natural flow and the second count was based upon plaintiff's appropriation rights in the foreign waters. The trial court decreed that both plaintiff and defendants were owners of land riparian to Duck Creek and ''entitled to use and enjoy the natural flow of the waters of said creek for the irrigation of their lands . . . having due regard to the like right of the said plaintiff and the said defendants'', but that neither plaintiff nor defendants, ''as such riparian owners have any right,

title or interest of, in or to the foreign water of said creek referred to in the complaint and answers herein''. It further decreed that ''plaintiff is the owner of the right to take, divert and appropriate twenty cubic feet per second of the foreign water flowing in said creek, referred to and described in the complaint and answers herein, but that defendants have no right, title, interest or estate of, in or to any of the foreign water flowing in said creek''. Plaintiff's rights as a riparian owner and as an appropriator were quieted as against defendants and defendants were enjoined from interfering with said rights. No award of damages was made.

Defendants first contend that, ''A lower riparian owner may not take all of the foreign waters in a stream by virtue of an appropriation as against an upper riparian who needs such water to cultivate crops upon his riparian land.'' They base said contention upon the wording of section 11 of the Water Commission Act of 1913 as amended. (Deering's Gen. Laws, 1937, Act 9091.) Said section provides in part, ''And all waters flowing in any river, stream, canyon, ravine or other natural channel, excepting so far as such waters have been or are being applied to useful and beneficial purposes upon, or in so far as such waters are or may be reasonably needed for useful, and beneficial purposes upon lands riparian thereto, or otherwise appropriated, is and are hereby declared to be public waters of the state of California and subject to appropriation in accordance with the provisions of this act.'' Defendants argue that as the foreign water in question ''may be reasonably needful for useful and beneficial purposes upon'' defendants' riparian land, it falls within the exception set forth in said section and is not subject to appropriation. This argument is based upon their construction of but a portion of one of the many sections of the act and, in our opinion, a reading of the entire act and a consideration of the declared public policy of the state, leads to the conclusion that the construction urged by defendants cannot be sustained.

The main purpose of said act was to provide an orderly method for the appropriation of the unappropriated waters of the state and, to that end, a state water commission was created and was vested with certain powers. We find nothing in the act which purported to enlarge the rights of riparian owners as such or to curtail the rights of appropriators. On the contrary, the language employed in the act

shows an intention to declare the waters of the state to be subject to appropriation in so far as that can be done without interfering with vested rights.  ■  As we read the exception found in the above-quoted portion of section 11 of the act, in the light of all other provisions of this act, it constitutes no more than an affirmation of the existing rights of riparian owners in and to the natural flow and it may not be construed as enlarging the rights of riparian owners so as to give them in effect riparian rights in foreign water as well as in the natural flow.  To hold otherwise, would mean that the act withdrew from appropriation all foreign waters in all streams of the state which had been used or might be reasonably needed at any time in the future for useful and beneficial purposes on any riparian land.  Such holding would obviously enlarge the rights of riparian owners and would be contrary to the evident purpose of the act and the express provisions of section 14 thereof.  Said section 14 reads, "This act shall not be held to bestow, except as expressly provided in this act, upon any person, firm, association or corporation, any right where no such right existed prior to the time this act takes effect."  We find nothing in the act which bestowed upon defendants, as riparian owners, any right in addition to the rights which they previously had as such riparian owners.

■  Defendants further contend that, "The findings fail to support the judgment as they do not find that the foreign water in which plaintiff's right is quieted was beneficially used by him."  We find no merit in this contention.  Plaintiff alleged in his complaint that "plaintiff is the owner of the right to take, appropriate and use the foreign water of the said creek to the extent aforesaid . . . ".  He further alleged certain evidentiary facts including the filing of the application, the issuance of the permit, the beneficial use of the water and the issuance of the final license as provided in the act.  The trial court found that plaintiff "is the owner of the right to appropriate, divert and beneficially use . . . twenty cubic feet per second of the foreign water flowing in said creek and described in the complaint and answers in this action".  This was a finding upon the ultimate fact and was sufficient to sustain the judgment.  Such finding upon the ultimate fact included a finding of all evidentiary facts necessary to sustain it and it was unnecessary for the trial court to make express findings upon such evidentiary facts.  (*Adams*

v. *Crawford,* 116 Cal. 495 [48 Pac. 488] ; 24 Cal. Jur. 968.)
We may state in passing, however, that there was no actual
dispute upon the trial concerning the beneficial use of the
water by plaintiff.  Defendants concede that plaintiff intro-
duced evidence ''to show necessary and beneficial use of the
foreign water'' and this evidence stands uncontradicted.

◼ Defendants further contend that, ''An appropriator's
right to take foreign water may not be quieted where at the
time of his application and the issuance of the permit thereon
the water had no existence.''  They cite and rely upon sec-
tion 1 (d) of the act.  While we believe there was sufficient
evidence to show the existence of the foreign water in the
creek at the time of the application, we are of the opinion that
defendants are in no position to raise the point on this appeal.
Plaintiff alleged in his complaint the existence of said foreign
water in the creek ''since 1927''.  Defendants admitted in
their answers the existence of said foreign water in the creek
''since 1927'' and affirmatively alleged its existence therein
''since many years prior to 1927''.  It is therefore a sufficient
answer to this contention of defendants to state that said con-
tention is based upon a statement of fact which is contrary to
the admissions and allegations found in their own pleadings.

◼ Defendants also contend that, ''The right to take
water as an appropriator may not be quieted where the evi-
dence fails to show the existence of the water in the quantity
quieted and the beneficial use and reduction to possession of
such water.''  The correctness of the foregoing statement as
an abstract proposition of law may be assumed but we do not
believe that such assumption is helpful to defendants here.
We have heretofore stated that the evidence as to beneficial use
by plaintiff stands uncontradicted.  Defendants concede that
plaintiff testified that after foreign water became present in
the stream he ''used up to 20 feet'' under his application for
appropriation and that he ''used 20 feet or more under his
appropriation if it was available''.  Defendants claim that
there is uncertainty in the testimony as to what portion of the
water used by plaintiff was foreign and what portion was
natural.  We believe, however, that the testimony was as
certain as the circumstances would permit.  Of course, the
natural flow and the foreign water became mingled in the
stream during the season of the year when there was a natural
flow.  After the natural flow ceased, there was only foreign

water therein. There appears to have been an ample supply of foreign water prior to the El Nido diversion in 1932, but thereafter such foreign supply was reduced to from 2½ to 4 second feet. The amount of water available to plaintiff was also reduced preceding the commencement of this action by the acts of defendants in diverting the water to their use. The testimony of plaintiff, when considered in the light of these circumstances, showed that he used 20 feet of foreign water under his appropriation when that quantity was available and, when it was not available in that quantity, he used whatever he could get. We believe the evidence was sufficient to show the existence for some time of the foreign water in the amount of 20 second feet or more and the beneficial use of such water to the amount of 20 second feet by plaintiff under his appropriation. Under these circumstances, he gained a prior right to 20 second feet of the foreign water by virtue of his appropriation and such right was not lost or diminished by the fact that the quantity of such foreign water flowing into the stream was thereafter reduced by circumstances beyond his control. As was said in *Crane* v. *Stevinson, supra,* at page 394, such reduction "does not affect the existence of the right".

The next contention of defendants is that, "An open and notorious use under claim of right of foreign waters by an upper riparian is sufficient to gain him a prescriptive right to such water as against a lower riparian who claims a right to such water by appropriation." We may assume the soundness of this proposition as an abstract statement of law, but the trial court found against defendants' claim to a prescriptive right and the evidence sustains said finding. A peculiar situation was presented in this case by the nature of the flow of stream in its natural state and the nature of the flow of the stream as changed by the introduction of foreign water into the watershed. During a portion of each year these waters were mingled. Defendants had erected a dam which they were admittedly entitled to use for the purpose of diverting some of the natural flow for use on their riparian lands. At certain times there was undoubtedly water in the stream in excess of the quantity necessary to meet all the desires of defendants and to satisfy all the rights of plaintiff. During such times, the use of the water by defendants, which did not interfere with the rights of plaintiff, could be of no

concern to plaintiff. At certain other times following the El Nido diversion, when the use of the water by defendants apparently interfered with plaintiff's rights, plaintiff spoke to defendants and they promptly turned the water down to him. Defendants admittedly used some of the foreign water some of the time but in order to establish a prescriptive right, it was necessary for them to show that their use thereof for the required period was open, notorious and under a claim of right adverse to the right of plaintiff. Under the evidence presented, the trial court was entirely justified in concluding that the only times when the use by defendants measured up to these requirements was at certain times during the three-year period immediately preceding the commencement of this action and that defendants had not acquired a prescriptive right by virtue of such use.

The final contention of defendants is that, ''The judgment is uncertain and insufficient.'' Defendants refer to the portion of the judgment in which it was decreed, ''That plaintiff is the owner of the right to take, divert, and appropriate twenty cubic feet per second of the foreign water flowing in said creek, referred to and described in the complaint and answers herein, but the defendants have no right, title, interest or estate of, in or to any of the foreign water flowing in said creek.'' They state that, ''From the judgment it is impossible to determine when the foreign waters begin to flow, in what quantities they flow, what particular waters they include or what portion of the stream can be attributed to natural flow.'' We do not believe it was either necessary or possible for the court to adjudicate these matters. The judgment decreed with certainty that plaintiff was the owner of the right to appropriate twenty second feet of the foreign water flowing in said creek. It is entirely apparent from the facts above set forth that the foreign flow, as well as the natural flow, was and is variable. Obviously, when there is less than twenty second feet of foreign water in said stream, plaintiff's right to appropriate then extends only to such foreign water as may be present. The claimed difficulty which defendants may have in determining what amount of water they may take at any given time by virtue of their riparian rights is a difficulty inherent in the nature of the flow of this stream and is not a difficulty caused by any deficiency in the provisions of the judgment. In our opinion,

the judgment was as definite and certain as it could be made under the circumstances.

The judgment is affirmed.

Shenk, J., Carter, J., Curtis, J., and Gibson, C. J., concurred.

Edmonds, J., not having been present at the argument of this case, did not participate in its decision.