[Sac. No. 6020. In Bank. Oct. 27, 1950.]

STEVINSON WATER DISTRICT (a Public Corporation) et al., Respondents, v. W. P. RODUNER et al., Appellants.

[Sac. No. 6021. In Bank. Oct. 27, 1950.]

STEVINSON WATER DISTRICT (a Public Corporation) et al., Respondents, v. STEPHEN CUNEO et al., Appellants.

Athearn, Chandler & Farmer, Hoffman & Angell and A. E. Chandler for Appellants.

Fred B. Wood, Melvin, Faulkner, Sheehan & Wiseman and Wallace Sheehan for Respondents.

GIBSON, C. J.—These are appeals from judgments entered in two consolidated actions wherein defendants were permanently enjoined from diverting certain "foreign water" flowing in Owens Creek in Merced County.

Plaintiff Stevinson Water District is a public corporation organized under the provisions of the California Water District Act (Stats. 1913, p. 815, 3 Deering's Gen. Laws, Act 9125) and embraces 8,000 acres of irrigable land in Merced and Stanislaus Counties. It owns the physical properties and franchises leased and used by plaintiff East Side Canal & Irrigation Company, a public utility engaged in furnishing water for irrigation purposes through the East Side Canal to some 10,000 acres of land. Pursuant to the lease between the two plaintiffs, the irrigation company is obligated to deliver water for the service of areas both within and without the Stevinson Water District.

Defendant's lands are riparian to Owens Creek, a natural watercourse having its source in the mountains in the easterly portion of Merced County and running thence in a westerly direction. Owens Creek is intercepted by the East Side Canal at a point downstream from the lands of defendants.

The natural flow of Owens Creek is derived from the rainfall within its watershed and ceases in April, May or June of each year, depending on the abundance or scarcity of the winter and spring rains. The so-called foreign water originates in Merced River and is diverted therefrom by Merced Irrigation District, a public corporation, hereinafter referred to as M. I. D. At various points within the boundaries of M. I. D. the foreign water is discharged into Owens Creek, which, with certain other drains and creeks not involved in the present litigation, is used as a means of transporting such water to the East Side Canal.

In 1925 James J. Stevinson, a corporation, claiming to be the owner of certain water rights in the Merced River, filed an action to enjoin interference with those rights by M. I. D. As a means of settling the controversy the parties entered into an agreement which, among other things, provided that the Stevinson corporation granted its rights in Merced River

waters to M. I. D., that M. I. D. guaranteed to deliver to the Stevinson corporation through certain designated channels, including Owens Creek, 24,000 acre feet of water per annum in stated amounts for each month during the April to September irrigation season, and that the Stevinson corporation was obligated to accept all water released by M. I. D. in excess of the guaranteed amount up to the safe carrying capacity of the East Side Canal and the various other channels. The agreement was incorporated in a decree of the Superior Court for Merced County in the case of *James J. Stevinson, a corporation* v. *Merced Irrigation District,* No. 6179, on February 11, 1930. In August, 1932, the Stevinson corporation conveyed to the present plaintiff, Stevinson Water District, all water rights derived from M. I. D. under the contract and decree.

Plaintiffs herein also own three permits to appropriate the natural flow and foreign water in Owens Creek in certain designated amounts. Subsequent to the trial in the present actions defendants applied for similar permits.

In 1947, which was a year of drought, there was no natural flow in Owens Creek after the month of April. To meet the irrigation requirements of their service area during that year, plaintiffs needed not less than 50,000 acre feet of water to be delivered into the East Side Canal. About July 17, 1947, defendants erected certain obstructions in Owens Creek and diverted water therefrom for irrigation of their own lands. As a result of these diversions plaintiffs received only a small amount of the water released by M. I. D. into Owens Creek, and severe damage resulted to the crops of landowners dependent upon plaintiffs for irrigation water.

The present actions were brought to enjoin the diversions made by defendants. On the trial it was conceded by the parties, and the court found, that defendants had riparian rights in the natural flow of Owens Creek. The court also found that plaintiffs were entitled to the foreign water delivered into Owens Creek pursuant to the agreement between plaintiffs' predecessor and M. I. D., and defendants were permanently enjoined from diverting such water.

Section 7075 of the Water Code provides that water which has been appropriated may be turned into the channel of another stream, mingled with its waters, and then reclaimed. This section clearly authorized the use of Owens Creek as a means of transporting water from Merced River to plaintiffs' canal, and it is undisputed that defendants have no right to

any portion of the foreign water released pursuant to the provision in the agreement whereby M. I. D. guaranteed to deliver to plaintiffs' predecessor the minimum amount of 24,000 acre feet per annum. Defendants contend, however, that water released by M. I. D. over and above the guaranteed amount is not covered by the terms of the contract and is abandoned water, that any rights which plaintiffs may have to the additional amounts diverted by M. I. D. are appropriative in nature, and that defendants as well as plaintiffs have certain appropriative rights therein. Accordingly, we must first consider the terms of the agreement. It was there provided that in addition to the quantities guaranteed, "any and all" water released by M. I. D. from its irrigation and drainage systems, or by seepage and runoff, which flows to M. I. D.'s western boundary through certain enumerated channels, including Owens Creek, "shall not be deemed water abandoned" by M. I. D. "but shall be deemed to be water delivered . . . for the use of" plaintiffs' predecessor, the Stevinson corporation. The corporation was "given . . . the right to take, divert and use any and all such waters," and was obligated to accept all the water up to the safe carrying capacities of the various channels, the agreement specifically referring to the safe carrying capacity of the East Side Canal. In regard to any such "excess" over and above the quantities guaranteed, however, it was stipulated in the contract that M. I. D. claimed the right to make provisions in the future for its use by others, whereas plaintiffs' predecessor claimed a present right to all "excess," and that these respective claims remained unaffected by the agreement.

We are of the opinion that the provisions of the contract amply justify the construction adopted by the trial court, namely, that plaintiffs acquired a contractual right to water in excess of the 24,000 acre feet minimum. The contract in express terms not only gave plaintiffs' predecessor the right to "take, divert and use" any water released by M. I. D. over and above the quantities guaranteed but it also obligated plaintiffs' predecessor to take all the "excess" water which could be safely carried. It may be true that M. I. D. could not be compelled to deliver more than 24,000 acre feet annually, but this fact, while affecting plaintiffs' rights as against M. I. D., would not affect their rights as against unauthorized third persons when water in excess of the guaranteed minimum is actually released. There can be no doubt that, at least until such time as M. I. D. makes provision for the use of

foreign water by others, plaintiffs are not limited to the designated 24,000 acre feet, and they have a contractual right to all water released by M. I. D. pursuant to the agreement, up to the safe capacity of the East Side Canal and the other channels used for delivery.

In *Crane* v. *Stevinson, Inc.*, 5 Cal.2d 387 [54 P.2d 1100], reference was made to the agreement which is involved in the present case, but the court did not interpret it and its terms were not discussed. Defendants rely upon language in the opinion which referred to certain of the foreign water as "abandoned by" M. I. D. (5 Cal.2d at p. 399). The problem presented here, however, was not then before the court, and it is clear that there was no intention to hold that all foreign water released after the first 24,000 acre feet constituted abandoned water.

Since the judgments herein are supported by the findings that plaintiffs are entitled to the foreign water in Owens Creek delivered pursuant to the agreement between plaintiffs' predecessor and M. I. D., we need not determine whether the trial court acted correctly in making additional findings to the effect that plaintiffs' right to the foreign water was also established by certain prior judgments which were binding upon defendants.

It appears without dispute that some of the foreign water has not been beneficially used by plaintiffs and that at certain times the present facilities are not adequate to carry all of it. In this connection the trial court found that during periods of heavy runoff the amount of water delivered to plaintiffs by M. I. D. exceeds the capacity of the East Side Canal, that at such times plaintiffs are required to release the excess amount by means of several spills and a siphon located at the canal, and that except for this excess water plaintiffs need and use all the waters of Owens Creek. Defendants argue, in effect, that the findings, conclusions, and judgments are subject to the construction that plaintiffs are entitled to all the foreign water, whether they can beneficially use it or not, and that insofar as this includes waste or surplus water it is contrary to section 3 of article XIV of the California Constitution.

Section 3 of article XIV provides, in part: "The right to water or to the use or flow of water in or from any natural stream or water course in this State is and shall be limited to such water as shall be reasonably required for the beneficial use to be served, and such right does not and shall not extend to the waste or unreasonable use or unreasonable method of

use or unreasonable method of diversion of water." ■ Under this provision, whenever water in a natural stream or water-course, such as Owens Creek, is not reasonably required for beneficial use by the owners of paramount rights, whether the water is foreign or part of the natural flow, such owners cannot prevent use of the waters by other persons, and the water must be regarded as surplus water subject to appropriation by those who can beneficially use it. (See, also, Water Code, § 1201; *City of Pasadena* v. *City of Alhambra*, 33 Cal.2d 908, 925-926 [207 P.2d 17]; *Bloss* v. *Rahilly*, 16 Cal.2d 70, 74 [104 P.2d 1049]; *Peabody* v. *City of Vallejo*, 2 Cal.2d 351, 368-369, 372 [40 P.2d 486].) ■ No injunction may issue against the taking of surplus or excess water, and the appropriator may take the surplus without giving compensation. (See *City of Pasadena* v. *City of Alhambra*, 33 Cal.2d 908, 926 [207 P.2d 17].)

Accordingly, to the extent that the water delivered into Owens Creek by M. I. D. cannot be captured and put to a beneficial use by plaintiffs, they cannot prevent appropriation of the water by persons such as defendants who can beneficially use it. ■ Although the judgments provide that plaintiffs are entitled to all of the foreign water, they must be interpreted to mean that plaintiffs are entitled to all of the foreign water which they are permitted to take by the Constitution. ■ The provision in the judgments that defendants do not have riparian rights in any of the foreign water is likewise consistent with the conclusion we have reached, since the right to take surplus foreign water does not depend upon a riparian interest but is appropriative in nature. (*Bloss* v. *Rahilly*, 16 Cal.2d 70, 74-76 [104 P.2d 1049].)

Plaintiffs may, of course, prevent waste of water by selling it to any willing purchaser for beneficial purposes. Section 67 of the California Water District Act (3 Deering's Gen. Laws [1943] Act 9125, § 67; see, also, Water Code, § 22259) provides that a water district may "enter into a contract for the lease or sale of any surplus water, or the use of such water, not then necessary for use within said district for any lawful purpose, for use either within or without the district. . . ." ■ The trial court, apparently in recognition of this section, provided in its conclusions of law that when there was excess water which plaintiffs could not put to a beneficial use, "defendants shall be entitled to purchase such excess water from plaintiff East Side Canal & Irrigation Company at rates to be fixed by . . . the Public Utilities Commission.

. . .'' A district, however, cannot compel anyone to purchase surplus water, and the statute obviously does not purport to authorize a district to exact compensation for water which may be taken by others as a constitutional right. Thus the section does not give a district the right to capture or retain water in a natural stream when it has no use for the water, when it can find no willing purchaser, and when the water will be wasted unless it is taken by persons located along the stream who can put it to a beneficial use. Any other construction of the statute would render it unconstitutional. It follows that the trial court's conclusion quoted above is erroneous if it is interpreted to mean that defendants must pay plaintiffs for surplus water. The error, however, appears only in the court's conclusions of law and was not repeated in the judgments. Accordingly, it may be disregarded as surplusage and does not require a reversal or modification. (See *Platner* v. *Vincent*, 194 Cal. 436, 444 [229 P. 24].)

There remains for consideration the question of whether there is a fatal uncertainty in the injunctions because they do not define the extent of plaintiffs' superior rights in terms of units of flow. Defendants assert that unless this is done they cannot know what their rights and obligations are under the injunctions. In the present case, however, the trial court was not required to make such a determination. Both the natural flow of Owens Creek, which defendants can take as riparian users, and that portion of the foreign water which is subject to appropriation because it exceeds the amount which plaintiffs can beneficially use, fluctuate in an unpredictable manner because of differences in rainfall. Also, the amount of water which may be released by M.I.D. in excess of 24,000 acre feet per year is not definitely fixed under the agreement discussed above, and it will vary in accordance with changes in the requirements for water by M.I.D. and, possibly, with changes in the safe carrying capacity of the channels. Further, as we have seen, Owens Creek is not the only channel used to transport foreign water released by M.I.D., and there is nothing to indicate how much, if any, M.I.D. will continue to release into Owens Creek. Under somewhat similar conditions this court in *Bloss* v. *Rahilly*, 16 Cal.2d 70, 79-80 [104 P.2d 1049], upheld a decree which provided that both the plaintiff and the defendants had rights as riparian owners, that the plaintiff could appropriate twenty cubic feet per second of foreign water, and that the defendants had no right to

any of the foreign water. The court rejected the defendants' contention that the decree was uncertain because it failed to show when or in what quantities the foreign water flowed or what portion of the stream could be attributed to natural flow. It was there stated: "The claimed difficulty which defendants may have in determining what amount of water they may take at any given time by virtue of their riparian rights is a difficulty inherent in the nature of the flow of this stream and is not a difficulty caused by any deficiency in the provisions of the judgment. In our opinion, the judgment was as definite and certain as it could be made under the circumstances." Similarly, the judgments in the present case may at times be difficult to enforce, but it does not appear how they could be made more definite.

The judgments are affirmed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Appellants' petition for a rehearing was denied November 20, 1950.