[Civ. No. 23679. Second Dist., Div. One. May 9, 1961.]

MAURICE GOLDSMITH, Appellant, v. CALIFORNIA
STATE BOARD OF PHARMACY, Respondent.

Arthur C. Cooper, Jerome Weber, Bertram S. Harris and John N. Frolich for Appellant.

Stanley Mosk, Attorney General, and Lynn Henry Johnson, Deputy Attorney General, for Respondent.

FOURT, J.—This is an appeal from a judgment which in effect discharged an alternative writ of mandate, denied a peremptory writ of mandate, and gave costs to the respondent, California State Board of Pharmacy, hereinafter referred to as the "Board."

A résumé of some of the facts is as follows:

The appellant, prior to January 29, 1957, was licensed as a pharmacist, had a license in the firm name of "Medical Guild Pharmacy," had a permit to sell hypodermics, syringes, needles, hypnotic drugs and a retailer's permit to sell prophylactics. The premises from which appellant operated were located at 4747 Vineland Boulevard, North Hollywood. Because of a violation, the nature of which we are not now concerned with, appellant on January 29, 1957, by action of the respondent Board had his license to practice as a licentiate in pharmacy suspended for one year (effective February 1, 1957). Execution of that order of suspension was suspended

for a period of three years and appellant was placed on probation under certain terms and conditions, one of which was to the effect that he should comply with all of the laws of the State of California and the United States, and with the rules and regulations of the respondent Board.

The case hereinafter will sometimes be referred to as Case Number 255. The decision therein became final.

On April 10, 1957, Martin Denkin, a deputy sheriff of Los Angeles County, who was working in association with an investigator of the Board, at about 3:50 p. m., went into appellant's store and talked with him. Denkin presented to appellant a prescription bottle to be refilled. Prior thereto, on February 15, 1957, Denkin had two prescriptions filled at appellant's place of business. On April 10th Denkin told the appellant that he had tried to reach his doctor but could not do so and asked appellant to refill the prescriptions. Appellant asked Denkin with reference to the dexedrine tablets theretofore prescribed, ''What do you need these for?'' and Denkin replied that he was a fighter and usually took dexedrine to better his condition before a fight, and would also like some extras. Appellant refilled the prescription and further gave Denkin 100 extra dexedrine tablets without any prescription therefor and charged Denkin $5.00 for such extra tablets. Appellant stated at the time to Denkin that he did not know whether he should do it, that he might get into trouble and Denkin was further told by the appellant not to tell anybody of the sale. Denkin then made an appointment with appellant to secure 2,000 more dexedrine tablets on April 13th. Denkin did not see the appellant use the telephone at the visit on April 10th and appellant was in his sight during all of the time Denkin was in the store excepting for a matter of about one minute.

Denkin left appellant's store with the refilled prescription and the bottle containing 100 extra dexedrine tablets and met a special investigator of the Board and turned over the purchases to such investigator.

Appellant apparently suspected that perhaps Denkin was connected in some way with a law enforcement agency and apparently to build up a defense called Lieutenant Marlowe of the Los Angeles Police Department and told him that someone had come to his store, had purchased some *dangerous* drugs and had wanted to buy a further amount without a prescription and inquired of the lieutenant if he would be interested in trying to catch the person. The lieutenant sus-

pected that the appellant was then and there the subject of an undercover investigation and that the call by appellant was defensive in nature. The lieutenant advised the appellant not to furnish any drugs without a prescription.

On April 13th Denkin returned to the store and told appellant that he had the money and wanted to make the purchase of 2,000 tablets of dexedrine as previously contemplated. Appellant acted frightened and stated that he did not know what Denkin was talking about, that it was dangerous, that he did not have the tablets, that he could not do anything like that, that he had too much to lose, that he had thought it over and had decided that he did not want to make the sale. Denkin left the store and shortly thereafter explained the situation to the investigator of the Board. The Board investigator with Detective Gardner of the Los Angeles Police Department then entered the store. The investigator asked appellant for the prescriptions made out to Denkin. The appellant identified the prescriptions and stated that he had refilled them on April 10 at about 5 p. m. Inquiries were then made about the extra 100 tablets of dexedrine sold by appellant to Denkin on April 10 and appellant admitted that he had sold the same without a prescription, but that his purpose in doing so was to entrap the man who had made the purchase. Appellant was asked why he had not contacted the Board or its representatives if he was interested in trapping someone, and his answer was that he did not know. There was an entry upon the prescriptions to the effect that appellant had called the doctor who issued the prescription at 5 p. m. on April 10. The investigator checked with the doctor and the doctor did state that he had talked with appellant but he did not remember the exact time or occasion.

At the administrative hearing the appellant stated that he sold the 100 extra dexedrine tablets to Denkin in an attempt to put him away. Appellant further stated that from the very first occasion when Denkin came into the store and that he thought "this guy is a screwball"—"Well, to me it was phoney right from the start. I mean, the man wasn't all there, as far as I was concerned." Appellant further stated that when Denkin asked for 2,000 dexedrine tablets that he, appellant, spoke to an employee of his and said, "This guy's got to be put away." Appellant further stated that "I'll give him a hundred for bait, . . ." and thereupon took the $5.00 for such 100 tablets. Near the conclusion of the administrative hearing the appellant's counsel asked the question:

"Q. And at the time that you delivered these additional dexedrine, what was your intention? A. Only one. I intended to—— There was intent for bait only. An intent only to have this man picked up, because all I could figure was he was a pusher.''

The appellant further testified that he had called the doctor who wrote the original prescriptions at about 4 p. m. on April 10. Appellant's wife testified that the call to the doctor was at about 5 p. m. When asked about the discrepancy in the time the appellant's answer was that the clock in the store must have stopped.

On July 11, 1957, in Case Number 255 a Board investigator filed a petition with the Board to revoke the probation theretofore granted to the appellant. It was therein charged that appellant had violated the provisions of sections 4227 and 4228 of the Business and Professions Code.[1]

On September 5, 1957, in Case Number 283 an investigator for the Board filed with said Board an accusation charging the appellant with having violated the provisions of sections 4227 and 4228 of the Business and Professions Code. Such accusation reads in part as follows:

''That the respondent has violated the provisions of §§ 4227 and 4228 of the Business and Professions Code of the State of California, which is gound [sic] for disciplinary action

---

[1]Section 4227 Business and Professions Code: "No person shall furnish any dangerous drug, other than any hypnotic drug, except upon the prescription of a physician, dentist, chiropodist or veterinarian.

"The provisions of this section do not apply to the furnishing of any dangerous drug, other than any hypnotic drug, by a manufacturer or wholesaler or pharmacy to each other or to a physician, dentist, chiropodist or veterinarian or to a laboratory under sales and purchase records that correctly give the date, the names and addresses of the supplier and the buyer, the drug and its quantity.

"No person shall dispense any hypnotic drug except upon the prescription of a physician, dentist, chiropodist or veterinarian, or upon the receipt of a properly executed official hypnotic drug purchase order form.

"A record of the hypnotic drug administered by any person exempt under Section 4225 shall be kept stating the date, name and address of the patient, name and amount of the drug administered. The provisions of this section with respect to the keeping of records do not apply when hypnotic drugs are combined or compounded with medicinal drugs which render such combination or compound unfit for hypnotic use."

Section 4228 Business and Professions Code: "No person shall dispense any dangerous drug upon prescription except in a container correctly labeled with the date, the name and address and prescription number of the furnisher, the names of the prescriber and of the person for whom prescribed, and the directions for use given by the prescriber."

pursuant to § 4357 of the Business and Professions Code, in the manner more particularly hereinafter alleged:

"That on or about April 10, 1947 [*sic*] respondent furnished a bottle containing 100 tablets of a dangerous drug, to wit: dexedrine, to one Martin Denkin; that at this time said Martin Denkin did not have, nor did he offer, a prescription for the said drug from any physician, dentist, chiropodist or veterinarian."

Section 11503[2] of the Government Code provides for the requirements of an accusation.

By stipulation the two matters, that is the petition to revoke the probation and the accusation as a new proceeding were consolidated and heard on January 30, 1958, before the Board with a hearing officer presiding. On February 11, 1958, the Board rendered its decision which was to the effect that appellant had violated the provisions of the Business and Professions Code, sections 4227 and 4228. In Case Number 255 the Board set aside its previous order, which was effective as of February 1, 1957 (suspending the one-year suspension), and ordered the suspension in full force and effect; however, it also made its order in Case Number 255 subject to its order in Case Number 283. In Case Number 283 it revoked appellant's license and stayed the revocation and placed appellant on probation, a part of the terms being that appellant not exercise the privilege of his license for six months, that he report to the Board whenever so ordered, and further that he comply with all of the laws and rules and regulations of the state. The Board made its Finding Number IV, among other things, as set forth herein.[3]

Appellant filed a petition for a writ of mandate in an effort to compel the Board to set aside its decision. The Board

[2]Government Code Section 11503: "A hearing to determine whether a right, authority, license or privilege should be revoked, suspended, limited or conditioned shall be initiated by filing an accusation. The accusation shall be a written statement of charges which shall set forth in ordinary and concise language the acts or omissions with which the respondent is charged, to the end that the respondent will be able to prepare his defense. It shall specify the statutes and rules which the respondent is alleged to have violated, but shall not consist merely of charges phrased in the language of such statutes and rules. . . ."

[3]"IV

"On or about April 10, 1957, the respondent sold and delivered a bottle containing 100 tablets of a dangerous drug, to wit: dexedrine, to one Martin Denkin and at the time of said delivery said Martin Denkin did not have nor did he offer a prescription for said drug from any physician, dentist, chiropodist or veterinarian."

filed its answer and the matter was heard in court on August 27, 1958. On November 7, 1958, findings of fact, conclusions of law, and a judgment were filed. Findings 8 and 13 of the trial judge are set forth herein.[4] The judgment ordered in effect that plaintiff take nothing by reason of his petition. The appeal is from that judgment.

It was stipulated that the transcript of the testimony taken at the administrative hearing held on January 30, 1958, might be transmitted to and considered filed with this court.

Appellant contends, among other things, that the accusation failed to state a cause of action upon which the Board could have proceeded to a hearing; that the petition to revoke probation did not state a cause of action upon which the Board could have proceeded to a hearing; that there was no finding by the Board in its decision that appellant was "guilty" and the suspension which followed was a void and illegal act; that there was insufficient evidence to support the findings of the Board and the findings of the trial court, and that the wrong law was applied by the Board and the court.

We will first consider the contention as to whether a cause of action was stated. Government Code, section 11503, in part and one of the findings in the administrative proceeding have been heretofore set forth. It is noted that ordinary and concise language is used in the accusation, the date of the violation is set forth, the names of the parties are spelled out and the statutes are specified which were allegedly violated. Appellant insists that the statement in the accusation to the effect that the "bottle containing 100 tablets of a dangerous drug, to wit: dexedrine . . ." is a conclusion of

---

[4] "8. That, in the aforesaid Findings of Fact, Determination and Issues and Decision, the respondent Board found and this court now finds that, on or about April 10, 1957, the respondent sold and delivered a bottle containing 100 tablets of a dangerous drug, to wit: dexedrine, to one Martin Denkin and, at the time of said sale and delivery, said Martin Denkin did not have nor did he offer to respondent, a prescription for the said dangerous drug, dexedrine, from any physician, dentist, chiropodist, or veterinarian."

"13. That this court carefully considered the Findings of Fact, Determination of Issues and Decision of respondent Board and after reviewing the entire administrative record, finds that the respondent Board did afford the petitioner a full and fair hearing as required by law and did not permit any abuse of discretion in its Decision; and that the court further finds that the respondent Board's Findings of Fact, Determination of Issues and Decision and each of them, are supported by substantial evidence and by the weight of the evidence in the light of the whole record; and further the court finds that the Decision of said respondent Board should not be set aside, annulled or vacated, but, on the contrary, should remain in full force and effect."

law rather than a statement of fact. There is no merit to the contention. (See *Rhode* v. *Bartholomew*, 94 Cal.App.2d 272, 279 [210 P.2d 768].) The accusation set forth that appellant furnished dexedrine and that it is a dangerous drug. The ultimate facts are alleged. Furthermore, the objection under the circumstances would appear to be one which goes to the form of the accusation and such an objection is waived unless proper proceedings are taken within 15 days of the service of the accusation upon the person accused. (See Gov. Code, § 11506, subd. (a).) No demurrer was ever filed in this case. There was no mention of the matter until the appellant was represented by his present and third set of attorneys on appeal. (See *Rembold* v. *City & County of San Francisco*, 113 Cal.App.2d 795, 798 [249 P.2d 58]; *Beyne* v. *Van Aalst*, 93 Cal.App.2d 325, 326 [209 P.2d 9].)

The appellant was represented by a competent lawyer at the administrative hearings and at the Superior Court hearing. No contention was ever raised at either of those hearings to the effect that the appellant did not know of what the charges consisted or that he was in anywise confused. His only defense was the novel one that he was attempting to lay low the purchaser of the dexedrine because he figured that the purchaser was "a pusher." (See *Wright* v. *Munro*, 144 Cal.App.2d 843, 848 [301 P.2d 997]; *Marlo* v. *State Board of Medical Examiners*, 112 Cal.App.2d 276, 278 [246 P.2d 69]; *Nelson* v. *Department of Alcoholic Beverage Control*, 166 Cal.App.2d 783, 787 [333 P.2d 771].)

The proceeding under Case Number 255 was merely a continuation of that original case. The appellant had been placed on probation. (See Bus. & Prof. Code, § 4359.) When appellant saw fit to pursue the course of conduct which he did pursue in selling the 100 tablets of dexedrine without a prescription to the officer he obviously violated the law and thereby violated the terms of his probation. Appellant seems to argue that the only way any proceeding can be initiated under the law is by way of accusation. In other words, he seems to insist in effect that probation can be granted but a proceeding to revoke such probation as such cannot be instituted. The proceeding to revoke, as heretofore indicated, was simply a part of the original proceeding. The tribunal retained a continuing jurisdiction until the probationary term expired. It is difficult to ascertain what more could have been stated in the petition to revoke probation under the cir-

cumstances. Certainly the appellant never had any doubt about what he was charged with and what he had to defend against nor did his then counsel ever indicate any doubt in the matter. The contention ought not to be raised or considered for the first time on appeal.

Considering next appellant's assertion that the Board never did use the word "guilty" set forth in section 4359, Business and Professions Code, and therefore the order was void. The Board did state:

"Respondent has failed to comply with the provisions of sections 4227 and 4228 of the Business and Professions Code of the State of California which constitute a cause for disciplinary action pursuant to Section 4357 of said Code."

We know of no rule which requires, under the circumstances, that the identical words of the statute be used. The Board did clearly state that the appellant had "failed to comply with the provisions of Sections 4227 . . ." and clearly conveyed the thought that appellant had done that which he was charged with doing. We think that the omission of the word "guilty" is of little consequence under the circumstances of this particular case. (See *Anderson* v. *George L. Barney Co., Inc.*, 1 Cal.App.2d 340, 343 [36 P.2d 717], and *Stoner* v. *Security Trust Co.*, 47 Cal.App. 216, 224 [190 P. 500].)

With reference to the contention that the evidence was insufficient—appellant overlooks the testimony. He argues, among other things, that there was no showing that dexedrine is a dangerous drug. There was testimony from Lieutenant Marlowe to the effect that appellant stated in effect to him that the tablets in question were "dangerous drugs." Appellant was a pharmacist and was engaged in that business. Having stated himself that the dexedrine tablets were "dangerous drugs" it would seem that no other proof was necessary. Our role in this case is to ascertain whether there is any substantial evidence to support the decision. (*Blue* v. *Watson*, 147 Cal.App.2d 582 at 590 [305 P.2d 911]; *Martin* v. *Alcoholic Beverage Control Appeals Board*, 52 Cal.2d 238, 246 [340 P.2d 1].) There was testimony from the investigator for the Board to the effect that appellant remembered selling the 100 dexedrine tablets to a man without a prescription, and that the man paid $5.00 therefor. Denkin testified that he went to the appellant's store to get a previous prescription refilled and that at the time appellant not only refilled the prescription but sold him the 100 extra

dexedrine tablets and appellant stated in effect at the time that he should not be selling such tablets under the circumstances. We think the evidence of guilt is clear, convincing and substantial.

 Considering the last contention of appellant; we are not clear as to what it is to which he refers. However, if it is because of the surplus conclusion of law which is unnecessary to sustain the judgment, we think it is harmless error, *if in fact* it is error at all. The trial judge found that the appellant furnished a dangerous drug to Denkin without a prescription on April 10, 1957. The judge concluded as a matter of law that appellant, by such conduct, violated the provisions of Business and Professions Code, section 4227 (furnishing a dangerous drug without a prescription) and section 4228 (furnishing a dangerous drug upon a prescription, but in a container improperly marked). Clearly the appellant could not violate section 4228 of the Business and Professions Code by furnishing a dangerous drug without a prescription. It is perfectly clear, however, that appellant did violate the provisions of section 4227, Business and Professions Code, and it is further clear that the judgment is supported by proper findings of fact and conclusions of law and that the court was right in adjudging that appellant take nothing by his petition. (See *Stevinson Water District* v. *Roduner,* 36 Cal.2d 264, 271 [223 P.2d 209]; *McNutt* v. *City of Los Angeles,* 187 Cal. 245, 249 [201 P. 592]; *Davis* v. *Baugh,* 59 Cal. 568, 576; *Hay* v. *Allen,* 112 Cal.App.2d 676, 681 [247 P.2d 94]; *Hammond Lumber Co.* v. *Gordon,* 84 Cal.App. 701, 706 [258 P. 612].)

For the reasons heretofore stated the judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied May 29, 1961, and appellant's petition for a hearing by the Supreme Court was denied July 5, 1961.